# EXHIBIT A

O2CANEWC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   NEW YORKERS AGAINST CONGESTION
    PRICING TAX, *et al.*,
4
                    Plaintiff,
5
            v.                              24 Civ. 367 (LJL)
6
    UNITED STATES DEPARTMENT OF
7   TRANSPORTATION, *et al.*,

8                                           Conference

                    Defendants.
9
    ------------------------------x
10  ------------------------------x

11
    ELIZABETH CHAN, ET AL.,
12
                    Plaintiffs,
13
            v.                              23 Civ. 10365 (LJL)
14
    UNITED STATES DEPARTMENT OF
15  TRANSPORTATION *et al.*,

16
                    Defendants.
17
    ------------------------------x
18
                                            New York, N.Y.
19                                          February 12, 2024
                                            10:07 a.m.
20
21  Before:

22                  HON. LEWIS J. LIMAN,

23                                          District Judge

24

25

O2CANEWC

1                                    APPEARANCES

2   LAW OFFICES OF JACK L. LESTER
         Attorneys for Plaintiff New Yorkers Against Congestion
3   Pricing Tax
    BY:  JACK L. LESTER
4

5   STEPOE LLP
         Attorneys for Plaintiff Chan, et al.
6   BY:  ALAN KLINGER
         DINA KOLKER
7        DAVID KAHNE

8   KAPLAN HECKER & FINK LLP
         Attorneys for Defendant TBTA, et al.
9   BY:  ROBERTA ANN KAPLAN
         GABRIELLE TENZER
10

11  SIVE, PAGET & RIESEL, P.C.
         Attorneys for Defendant TBTA, et al.
12  BY:  MARK CHERTOK
         ELIZABETH KNAUER
13
    NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
14       Attorneys for Defendant NYS Department of Transportation
    BY:  ANDREW FRANK
15
    NEW YORK CITY LAW DEPARTMENT
16       Attorneys for Defendant NYC Department of Transportation
    BY:  NATHAN TAYLOR
17
    DOJ-USAO
18       Attorneys for Defendant US Department of Transportation,
    FHA, et al.
19  BY:  ZACHARY BANNON

20

21

22

23

24

25

O2CANEWC

```
 1                (Case called)
 2                MR. LESTER:  Good morning, Judge.  Jack Lester for the
 3      plaintiffs.
 4                THE COURT:  Good morning, Mr. Lester.
 5                MR. KLINGER:  Good morning, your Honor.  Alan Klinger
 6      from Steptoe for the Chan plaintiffs.
 7                THE COURT:  Good morning.
 8                MR. KAHNE:  Good morning, your Honor.  David Kahne
 9      also from Steptoe for the plaintiffs.
10                MS. KOLKER:  Good morning.  Dina Kolker from Steptoe
11      for plaintiffs and Chan plaintiffs.
12                THE COURT:  For the defendants?
13                MR. BANNON:  Zach Bannon from the U.S. Attorney's
14      Office for the federal defendants.
15                MR. TAYLOR:  Nathan Taylor with the New York City Law
16      Department for the New York City Department of Transportation.
17                MR. FRANK:  Andrew Frank from the New York State
18      Attorney General's Office on behalf of the State Department of
19      Transportation.
20                MS. KNAUER:  Elizabeth Knauer from Sive Paget & Riesel
21      for the MTA and TBTA defendants.
22                MR. CHERTOK:  Mark Chertok also from Sive, Paget &
23      Riesel for MTA, TBTA, and TMRB.
24                MS. KAPLAN:  Roberta Kaplan from Kaplan Hecker for the
25      MTA and related defendants.
```

O2CANEWC

1          THE COURT:  Good morning.  So there are two counsel

2     for the MTA; is that correct?

3          MS. KAPLAN:  There are, your Honor.  Kaplan Hecker and

4     Sive Paget.

5          THE COURT:  Okay.  So I scheduled this conference as a

6     status conference and something of a scheduling conference for

7     two cases that appear to me to be related — the 23cv10365 case

8     and the 24cv367 case.  I laid out an agenda for the conference

9     in the order that I issued.

10          What I'd like to do is hear first from the plaintiffs,

11     and for lack of a better way of organizing it, from the

12     plaintiffs in the first filed case and then from the plaintiff

13     in the later filed case about the case, what they want me to

14     know about the case, about the plans that I should have for

15     managing the case, the timing of any expected motions including

16     the timing of the filing of the certified administrative

17     record.  I indicated the question of whether discovery is

18     contemplated and then a position with respect to settlement.

19     And then I'll go through with respect to the defendants the

20     same set of questions.

21          I noted in my order that there are actions also

22     challenging congestion pricing in the District of New Jersey

23     and in the Eastern District of New York, and if anybody is able

24     to give me an update on those cases and any effect those cases

25     might have on this case, that would also be appreciated.

O2CANEWC

1            So why don't we start with the plaintiff in the first

2      filed case.

3            MR. KLINGER:  Yes, your Honor.  Thank you.

4            As we indicated in our letter to the Court, we've only

5      recently been retained here, but we've been working on it

6      since.  Our intention as to your first point is to amend the

7      pleading to add certain allegations about the attempted

8      involvement by the Chan plaintiffs in the process to perform

9      the environmental review and how that was stymied.  Your Honor

10     asked about the overall nature of the case.  This case, in

11     essence, challenges the Federal Highway Authority's approval of

12     congestion pricing with a finding of no significant impact.

13     The claim here is the plaintiffs in this case, they're not

14     against congestion pricing.  We wanted to make that clear.  We

15     don't think that there was appropriate environmental review

16     done here.  The acronym goes by FONSI, finding of no

17     significant impact, we challenge that.  And the significant

18     basis for that, your Honor, is a sister federal agency, the

19     EPA.  When the EPA commented, the EPA said that they were not

20     convinced that there was no significant impact and they

21     recommended that there be additional studies done because

22     whereas the congestion pricing plan will divert traffic from

23     the Manhattan business district and will presumably ease some

24     congestion and some air pollution there, the findings of the

25     federal agencies reviewing this acknowledge that because of

O2CANEWC

1    that diversion of traffic, there are going to be other areas

2    where the congestion will get worse, the air pollution will get

3    worse, there will be safety issues.

4         The core group of the present plaintiffs is Battery

5    Park City, which Battery Park City, your Honor, is right

6    adjacent to one of the exempted thoroughfares.  So there will

7    be a lot more traffic and there will be resulting increased air

8    pollution, noise pollution, and other aspects right there where

9    10,000 people reside.  And it's not just 10,000 people.  There

10   are five public schools in the area.  There are playgrounds in

11   the area that will all be impacted.

12        And what we are asking for, your Honor, is that there

13   actually be an environmental impact statement performed, which

14   is typically what happens in tolling cases around the country.

15   And here we don't really have to guess at the motivation of

16   what happened because defendants laid it out for us.  They said

17   that -- they say and it's now the head of the MTA who is in

18   a -- I think chief department officer at the time, came and

19   reported that they worked it out with the Federal Highway

20   Administration that the environmental review is going to be

21   fast tracked.  That's the actual language that is used.

22        And so that we say, your Honor -- you'll hear from

23   defendants that there were thousands of pages in the record.

24   There are thousands of pages in the record, but quantity

25   doesn't equal quality in terms of the nature of the review.

O2CANEWC

1          So that is what we are asking is, again, that there be

2     a full environmental impact statement.  And the other part

3     where they've laid a road map for the challenge, your Honor, is

4     that part of what you're supposed to do is consider other

5     alternatives to see whether those alternatives can accomplish

6     the goal without some of the deleterious effects.  All the

7     other alternatives were dismissed because they wouldn't raise

8     enough money.  That's what was going on here, your Honor.  It

9     isn't so much the congestion pricing as they want a billion

10    dollars a year or 15 -- to be able to fund a 15 billion-dollar

11    capital project and that's why they swept away all the other

12    alternatives that could reasonably accomplish the goal of

13    reducing congestion, but not without the adverse impacts in

14    Battery Park City.

15          Your Honor, just to jump ahead for a moment.  We are

16    cocounsel in the case in the Eastern District of New York.  And

17    so that we are all in favor of coordination of discovery.  And

18    we'll get to this last part about settlement in a minute, your

19    Honor.  But when you have that case, which also echoes with

20    Mr. Lester, is that not only Battery Park City but other areas,

21    South Bronx, northern part of Staten Island, the study that was

22    done acknowledges that there's going to be significant

23    increased air pollution there.  So, again, that's sort of the

24    nuts of the basis of the challenge.

25          THE COURT:  Let me ask you about your reference to an

O2CANEWC

1   amended complaint.  How do you propose to amend the complaint,

2   and when do you intend to file your amended complaint?

3        MR. KLINGER:  Your Honor, we would like to file it

4   within two weeks from today so as not to delay matters.

5        THE COURT:  And what can I expect in terms of the

6   nature of the amendments?

7        MR. KLINGER:  Nature of the amendments will spell out

8   more the attempts from this group to have the concerns of

9   Battery Park City addressed in the record.  And, your Honor, as

10  best as we can tell, and we haven't been in the case that long,

11  but as the best we can tell -- there's no discussion of Battery

12  Park City and the impact there -- sorry, your Honor -- whereas

13  there is discussion about impacts in other communities.

14  Battery Park City is 92 acres, 10,000 people.

15       THE COURT:  Help me with how the efforts of I guess

16  your clients to be heard and the fact that they were not heard,

17  at least to the extent that you claim they should have been,

18  adds to your claim.  How is that relevant to your claim as to

19  whether an environmental impact statement should have been

20  prepared?

21       MR. KLINGER:  Because, your Honor, it would go to the

22  fact that significant issues weren't addressed.  So that when

23  you have a FONSI where it says that there's no significant

24  issues, no significant impact, how can they conclude that, your

25  Honor, when they didn't even look at what the issues are that

O2CANEWC

1  are relevant to the plaintiff group?

2          THE COURT:  Did that group submit -- I take it there

3  was a notice and comment period, correct?

4          MR. KLINGER:  Yes, there was, your Honor, and yes,

5  they did.

6          THE COURT:  And so what is it that you claim didn't

7  happen during the notice and comment period that should have

8  happened?  I guess what I'm trying to figure out is what your

9  allegations are going to add to what I can read in the

10  administrative record and the arguments you can make from that.

11          MR. KLINGER:  Your Honor, an assessment of the actual

12  impact would be for air pollution, noise pollution, parking.

13  Part of the concerns are that you're going to hear from various

14  groups of plaintiffs is that because of diversion of traffic --

15  and here traffic will be diverted because the West Side

16  Highway -- West Street, West Side Highway is an exempted

17  thoroughfare -- that since there's going to be more traffic

18  going through there, it is going to add to the deterioration of

19  air quality, noise pollution, and other safety hazards.

20          THE COURT:  And we may be talking past each other.

21  Wouldn't all of that be in the comments that your client

22  submitted to the agency?

23          MR. KLINGER:  But, your Honor, what our clients

24  wouldn't have is whether these concerns were actually examined

25  or looked at by the federal agency that's performing the

O2CANEWC

1    environmental review.  That's what we're seeking to ascertain.

2                THE COURT:  So what is it that the allegations will

3    add to what's already in the complaint?

4                MR. KLINGER:  That, your Honor, the allegations

5    would --

6                THE COURT:  And in the administrative record.

7                MR. KLINGER:  Yes.  They would add for us to be able

8    to assess or show the absence of any consideration of the

9    issues that are relevant to Battery Park City residents.

10               THE COURT:  And you're saying that that would be

11   established from the administrative record and you think it's

12   not sufficiently pled in the existing complaint?

13               MR. KLINGER:  Yes.  And I want to add to the

14   particulars of that, your Honor, we're also under discussion

15   about whether to add two claims for relief that were brought in

16   the Eastern District, the action in the Eastern District of New

17   York.

18               THE COURT:  What are those?

19               MR. KLINGER:  A violation of the Green Amendment,

20   which is the state provision that speaks to the need to

21   consider environmental impact.  That, your Honor, I feel

22   comfortable saying at this stage we will be adding.  We are

23   looking, your Honor, at claims under the Dormant Commerce

24   Clause and the right to travel, to see whether those would be

25   appropriate here.  We don't want to add them, your Honor, as a

O2CANEWC

1    knee-jerk reaction, but we're trying to assess that working

2    with a plaintiff's group.

3              THE COURT:  Okay.  On the assumption that we establish

4    a schedule for you to file an amended complaint two weeks from

5    today, what would the next steps be in this case from your

6    perspective?

7              MR. KLINGER:  Well, our next steps would be to proceed

8    to discovery.  I have a feeling you're going to hear about

9    motions to dismiss.  But we would --

10             THE COURT:  Why would there be discovery in this case?

11   It's a case where the challenges are under the APA and NEPA,

12   and why is any discovery necessary beyond what's in the

13   administrative record, and what is the discovery?

14             MR. KLINGER:  One of the areas we would wish to

15   explore is the reaction to the defendants to the EPA submission

16   saying that they thought the environmental review is inadequate

17   and discussions of that nature.

18             THE COURT:  That doesn't quite answer my question.

19   That answers half the question, which is the question of what

20   you're seeking.  Is that through depositions?

21             MR. KLINGER:  First, it would be document requests,

22   your Honor, and then we would assess that.

23             THE COURT:  And then why would that be appropriate

24   given the nature of the challenges in this case?

25             MR. KLINGER:  Well, I think it's relevant, your Honor,

O2CANEWC

1    whether the reaction from the reviewing agency, the reaction

2    to --

3            THE COURT:  No, no, I guess in a case where -- let's

4    put aside for the moment the Dormant Commerce Clause and the

5    state claim.  Under the APA claim and the NEPA claim, what

6    would any discovery be permissible if you're challenging the

7    lawfulness of an agency action?  Isn't the record appropriately

8    limited to what is in the administrative record?

9            MR. KLINGER:  We would assess, your Honor, again, as

10   we get further into the case.

11           THE COURT:  Okay.  All right.  You want to go through

12   the other items in my list.

13           MR. KLINGER:  Yes, surely, your Honor.

14           As we expressed in the -- the Chan group of plaintiffs

15   are amenable to a settlement conference.  We can fill your

16   Honor in and combine two of the things that you asked about

17   that the -- it was the magistrate judge right in the Eastern

18   District of New York asked the same questions as your Honor,

19   and we accepted and were responsible for combining all the

20   responses from the various defendants.  I mean, some of them

21   are plainly here today.  And I think I have this right, your

22   Honor, is whereas the defendants were not interested in

23   settlement of an individual case, I think everyone agreed that

24   they would be willing to participate in a conference having to

25   do with -- if it was a global settlement.  And, your Honor,

O2CANEWC

1    defense counsel can speak --

2            THE COURT:  Yeah, I'll hear from them.

3            MR. KLINGER:  So that would be -- so, again, I do

4    think a global settlement conference is something we would be

5    interested in for Chan --

6            THE COURT:  And I presume if there's interest in that,

7    the plaintiffs would organize that or the defendants and it

8    would be in front of the magistrate judge for the Eastern

9    District.  Have you given thought to that?  From my

10   perspective, I'm indifferent to how you structure your

11   settlement discussions.  I would help to facilitate it if

12   there's interest in me doing so.

13           MR. KLINGER:  Your Honor, the Chan plaintiff, since we

14   also represent the -- we're cocounsel in the Eastern District

15   matter, we are in the United Federation of Teachers and some of

16   the other parties there, we would be happy to coordinate if

17   there was to be a global settlement conference.  I can

18   represent that we've spoken with cocounsel in the Eastern

19   District of New York action and there will be -- we have told

20   the Court there that we would be willing to participate in a

21   global settlement.  And, your Honor, we would be, I mean,

22   indifferent is probably not the right word, and we would be

23   willing to participate either under the auspices of your Honor

24   or the judge in the Eastern District of New York.  And if it

25   made a difference to defense counsel, we would be happy to

O2CANEWC

1    speak to them about that.

2          THE COURT:  Let me ask you the other questions that

3    I've got.

4          Since you mentioned that you are cocounsel in the

5    Eastern District of New York or counsel in the Eastern District

6    of New York, has there been a schedule set in that case for

7    motions?  And more broadly, how in your view should I manage

8    this case so that I'm not replicating what is being done by

9    judges in other districts?

10         MR. KLINGER:  Your Honor, the initial settlement

11   conference in that case is this coming Friday.

12         THE COURT:  That's initial status conference?

13         MR. KLINGER:  Yes.  And they have sought information

14   very similar to what your Honor did in your order.

15         THE COURT:  Okay.  Have you given any thought to

16   coordination between the cases?  If there are going to be

17   similar motions filed in each, it's obviously a question I'm

18   going to ask defense counsel, but from plaintiff's perspective,

19   why is -- maybe you're the earliest filed case among all of the

20   districts.  I don't know the answer to that.  But what

21   efficiency is there in having cases filed in the Southern

22   District of New York, the Eastern District of New York, and the

23   District of New Jersey that seem to involve the identical legal

24   issues with an identical administrative record?

25         MR. KLINGER:  Yes.  And, I mean, so what was done with

O2CANEWC

```
1    the District of New Jersey was there was a stipulated
2    administrative record and we would -- we will be in
3    consultation with plaintiff's attorney there to see about their
4    willingness to be involved if there is a global settlement
5    conference.  That case, your Honor, is the most advanced of
6    all.  I believe there have been summary judgment motions filed
7    in that case.
8              THE COURT:  Do you have a position as to whether I
9    should stay any action in this case pending the outcome of
10   motions in that case?
11             MR. KLINGER:  We would need to discuss that with our
12   client and then with counsel.
13             THE COURT:  Okay.
14             MR. KLINGER:  But, your Honor, back to your prior
15   question, we would certainly be interested in coordinating
16   discovery among the matters.  There is no reason -- if
17   discovery is to be had, there's no reason that it has to be
18   replicated in three or four different places.
19             THE COURT:  Okay.  All right.  Let me hear from
20   Mr. Lester.
21             MR. LESTER:  Good morning.
22             THE COURT:  Mr. Lester, how does your case differ from
23   the case that Mr. Klinger is handling?
24             MR. LESTER:  Well, it differs in two respects.  First,
25   we represent environmental justice communities, East Harlem,
```

O2CANEWC

1   South Bronx, Lower East Side.  Those communities will be

2   suffering from traffic diversion, and environmental impact

3   statement, it called for mitigation that was not accomplished.

4   Because they did the FONSI, they did not have to do mitigation,

5   come up with alternatives, and that would be required for those

6   communities.

7          So our case differs --

8          THE COURT:  I'm not sure I hear a difference other

9   than you've got a different group of clients.

10          MR. LESTER:  Right.  But we highlight that issue as

11   opposed to their case, which emphasizes Battery Park City.

12          THE COURT:  Now, I've noticed that you also have class

13   allegations in your case.

14          MR. LESTER:  Yes, and that's the other difference.

15          THE COURT:  Are you contemplating moving for class

16   certification, and what is the efficiency or justification for

17   bringing this as a class action rather than on behalf of the

18   individuals that you've got?  I guess I can understand maybe

19   from the defendant's perspective there would maybe be an

20   advantage that they could bind everybody.  But from the

21   plaintiff's perspective, why is this being done as a class

22   action?

23          MR. LESTER:  Well, if there are alternatives and

24   mitigation, we want that to apply to the community in general.

25   So, for example, South Bronx has certain needs that the Lower

O2CANEWC

1   East Side may not have or East Harlem.  So by bringing it as a

2   class action, we have representative plaintiffs and, therefore,

3   any remedy could apply to the class.

4          THE COURT:  And is it your position that that wouldn't

5   be the case if the case goes forward with the individual

6   plaintiffs that you've got who are members of each of these

7   different communities?

8          MR. LESTER:  Well, it's possible that if we had a

9   declaratory judgment on behalf of one individual that applied

10  to the entire class, that that would be appropriate.  But I

11  think as a prophylactic measure to bring it as a class action

12  creates some extra viability and there would be notice to the

13  class.  There could be monetary damages that would have to

14  apply to the class as well.

15         THE COURT:  What's the nature of -- give me a moment.

16         MR. LESTER:  So, for example --

17         THE COURT:  I'm sorry.  I don't see in your complaint

18  a request for monetary damages.  I do see requests for various

19  types of declaratory relief and injunctive relief and for the

20  payment of costs.  Is there something I'm missing?

21         MR. LESTER:  I think we request certain monitoring

22  that should occur and that could be unique to each community.

23         THE COURT:  Okay.  But you're not seeking monetary

24  damages at this point?

25         MR. LESTER:  Well, in order to accomplish monitoring,

O2CANEWC

1    it would probably have to be some compensation, some

2    appropriation of funds.

3           THE COURT:  Well, in other words, am I correct in

4    understanding that the monitoring, if I ordered it, would have

5    to be paid for by the defendants, but that you're not seeking

6    monetary relief on behalf of members of the class?

7           MR. LESTER:  Correct.

8           THE COURT:  That's correct?

9           MR. LESTER:  Correct.

10          THE COURT:  So how do you propose to prosecute this

11   case?  Are you going to be seeking discovery?  Do you have a

12   view with respect to how I coordinate it with the case that was

13   filed by Mr. Klinger?  Why don't you address those issues.

14          MR. LESTER:  Well, I think the administrative record

15   is fairly complete.  I mean --

16          THE COURT:  I understand it's also pretty lengthy.

17          MR. LESTER:  Right.  So the issue there for us is that

18   in the record, the EPA indicated that there should be a full

19   environmental impact statement, and there should be mitigation,

20   there should be alternatives.  But the FONSI, in contradiction

21   to the facts laid out by the environmental assessment,

22   contradicted the facts.  So I think in terms of the record,

23   we're pretty confident that we could base our case and win a

24   motion for summary judgment based on the record.  But insofar

25   as plaintiffs in the companion case endeavor into discovery, we

O2CANEWC

1    would cooperate and join with that.

2              THE COURT:  Anything else I should know from your

3    perspective?

4              MR. LESTER:  Well, I think in terms of a global

5    settlement, we're certainly allied with the other plaintiffs.

6    We think it should be handled efficiently in one jurisdiction.

7    All the plaintiffs should be joined under one roof as it were.

8    I mean, it doesn't pay to have inconsistent verdicts and

9    inconsistent judgments.  That would not encourage judicial

10   economy.

11             THE COURT:  And what about coordination of the cases

12   with the Eastern District and the District of New Jersey and

13   the question of whether I should stay any action in this case

14   pending a decision by the District of New Jersey?  You do seem

15   to be something of a latecomer to this litigation.

16             MR. LESTER:  Again, we would take that under

17   advisement, consult with the other plaintiffs and my client.

18             THE COURT:  Okay.

19             MR. LESTER:  But I do want to emphasize we have one

20   additional issue.  There's currently public hearings through

21   the TMRB, the Transit Mobility Review Board, and they're

22   governed by the State Administrative Procedure Act.  And we

23   have many plaintiffs who are small business people, employees

24   of small businesses, and they will be economically and

25   financially harmed, and the state administrative procedure

O2CANEWC

1    calls for an evaluation of economic impacts.  And the failure

2    of the EIS process to do that requires that the final

3    environmental assessment take into account the financial and

4    economic impacts.  And, therefore, there would have to be a

5    supplemental EIS.

6              THE COURT:  Okay.

7              MR. LESTER:  So that's an additional claim that we

8    have.

9              THE COURT:  Okay.  All right.  Thank you.

10             MR. LESTER:  Thank you.

11             THE COURT:  All right.  I'll hear from whoever on the

12   defense side wants to go first.  It would be helpful for

13   somebody on the defense side, maybe at the beginning, to lay

14   out the contemplated timetable for the implementation of

15   congestion pricing.  I'm aware that that has been laid out in a

16   case in the District of New Jersey, but I haven't heard it

17   firsthand and I think that will help frame the handling of

18   this.  Ms. Kaplan.

19             MS. KAPLAN:  Yes.  Thank you, your Honor.

20             So let me just touch on that and touch on kind of the

21   landscape right now of the various cases, your Honor.

22             Your Honor has it exactly right.  There are two cases

23   in the District of New Jersey, there are two cases before your

24   Honor, and there's a case in the Eastern District.  We have

25   told Mr. Klinger that we intend to move to change venue for the

O2CANEWC

1    Eastern District case to move it to your Honor.  We think it

2    makes no sense to have a case in the SDNY and the EDNY at the

3    same time.  The cases are the same; the facts, the law is the

4    same, as your Honor as pointed out.

5              THE COURT:  How quickly do you contemplate making that

6    motion in the Eastern District?  I gather you've got a

7    conference coming up later this week.

8              MS. KAPLAN:  We would file it today, your Honor, but

9    we're waiting to hear back from Mr. Klinger on a motion

10   schedule.  That's what Judge Gujarati requires before you file

11   a motion.  So as soon as he gets back to us with a motion

12   schedule, it's ready to go and file that as soon as possible.

13   And we actually think they should consent to that given that

14   they're counsel to both cases.

15             But, in addition to that, your Honor, you said before

16   that you're a latecomer to the case.

17             THE COURT:  I didn't -- maybe I personally am a

18   latecomer.  I also meant to say that Mr. Lester seems to be a

19   latecomer.

20             MS. KAPLAN:  I'm a little bit of a latecomer, too,

21   your Honor.  But with respect to New Jersey, I would say that

22   you're a latecomer, but you're not a latecomer.  And the reason

23   for that, your Honor, is because the New Jersey case has been

24   through four judges I think.  The judge who's the current judge

25   on the case, Judge Conner, was recently assigned -- Gordon,

O2CANEWC

1    excuse me -- was recently assigned.  It is true that summary

2    judgment is fully briefed in that case and is sub judice, but

3    the judge is almost as much of a newcomer to the issues in

4    these cases as your Honor is.

5         In terms of the timetable for our clients, let me be

6    very clear.  The law that require there to be congestion

7    pricing was passed in the State of New York in 2019.  We're now

8    five years past that point.  Our client, understandably, your

9    Honor, feels a great responsibility to implement the congestion

10   pricing plan their people have worked on these past many years

11   as soon as possible.  Our hope is to do so in June of this

12   year.  And, as you can imagine, your Honor, given what I've

13   already said, from our client's perspective, what they want is

14   expediency and finality.  They would like a decision and they

15   would like to move forward.

16        And that takes me -- I'm going to let my environmental

17   counsel respond to any questions about environmental law, your

18   Honor, because I'm not even going to pretend to know what I'm

19   talking about there.  But let me say that with respect to

20   settlement, given what I've already said, your Honor must be

21   able to imagine what we're thinking.  We certainly would want

22   there to be finality.  If a global settlement process led to

23   finality for our clients, that would be great.  There are

24   claims that have been filed in some of the actions or are

25   contemplated being filed in these actions, constitutional

O2CANEWC

1    claims under right to travel, Dormant Commerce Clause that

2    probably aren't ripe yet.  So we would have to figure out

3    finality on that end to settle, but that is very much in our

4    interest if we can get it.  The only other thing I would add

5    before environmental issues --

6              THE COURT:  Maybe, Ms. Kaplan, I assume you'll touch

7    on what are in some ways related issues, sort of how to manage

8    the cases across the districts.  You answered that in part with

9    respect to the Eastern District of New York, and then the

10   question of class certification, which as to the APA claims,

11   the administrative claims, seems to me to make very little

12   sense.  But it may actually with respect to the Dormant

13   Commerce Clause claims have more sense to it.  I don't know if

14   you've given any thought to how to structure -- how I should

15   structure things, how things should be structured so as to

16   achieve what I would hope would be everybody's goals of

17   efficiency and expediency.

18             MS. KAPLAN:  So our current thinking again, your

19   Honor, subject to my colleagues, would be that in the -- that

20   the EDNY case get moved here, and then that here we would file

21   a motion for summary judgment.  We agree with your Honor that

22   there's no discovery in connection with the environmental

23   claims, a motion for summary judgment on the administrative

24   record, so the administrative record is before your Honor in

25   the Chan case.

O2CANEWC

```
 1            If there are constitutional claims or other claims
 2    that are pled that are unripe, we would move to dismiss those
 3    claims as unripe at this point in time.  If they become ripe,
 4    once the plan is implemented, we could deal with that then, but
 5    we don't think there's any necessity for class now because the
 6    claims just aren't ripe in terms of the constitutional or other
 7    related claims that they talked about.  We would like to do
 8    that as quickly as possible.  We don't think there would have
 9    to be a lot.  And, again, I'm going to defer to my
10    environmental colleagues, but we're basically ready to move for
11    all intents and purposes because we've already done it once in
12    New Jersey.  And then in terms of global settlement, the one --
13            THE COURT:  And let me interrupt you again for a
14    second because after looking at your colleague, you added what
15    may or may not be an important caveat, which is summary
16    judgment in the Chan case.  Explain that to me and, if that's
17    what happens, what I do with respect to the New Yorkers Against
18    Congestion Pricing.
19            MS. KAPLAN:  Yeah.  One thing I know, your Honor, is
20    when to speak and when not to speak, so I'm going to defer to
21    my environmental colleagues.
22            THE COURT:  All right.  I'll call on you, Ms. Kaplan,
23    with respect to the rest.
24            You'll identify yourself again for the record.
25            MR. CHERTOK:  Perhaps we should back up a couple of
```

O2CANEWC

steps before I get to answer your question.  This is a case

brought under the National Environmental Policy Act, or NEPA.

Plaintiffs allege that the environmental assessment and the

resulting finding of no significant impact were inadequate.

What they don't say is that there were extensive studies of

traffic patterns that would result from congestion pricing over

a 28-county area, which by definition included Battery Park,

the Lower East Side, the Bronx, and other areas of New York

State, as well as New Jersey and Connecticut.

That study went over for four years.  So this notion

of a fast track is vernacular.  There is no fast track when it

comes to a federal agency doing environmental studies, as your

Honor is probably well aware.

Their claim is that there's a need for discovery

because EPA commented and there was no response to those

comments.  That's just simply wrong.  EPA signed off on the

final environmental assessment.  So the notion that you need

discovery is a nonstarter, and an administrative record would

show whatever EPA said, in any event.

The issue about the environmental justice communities

that Mr. Lester mentioned, there were extensive studies of

potential impacts on such communities in basically a 12-county

area, including all the areas which Mr. Lester mentioned.

There was a discussion of whether there could be impacts on

communities that were already burdened by historic land use

O2CANEWC

1    decisions that are unrelated to the project.  And the project

2    includes a discussion of potential impacts and includes

3    mitigation, $155 million worth of mitigation in these areas.

4    So the notion that there was no study and no mitigation is

5    simply belied by the administrative record.  And the notion

6    that there is no alternatives fails on a very fundamental

7    point.

8            The purpose of the project as set forth in the

9    legislation is two-fold.  One is to limit and reduce congestion

10   in the most crowded urban area in the country, New York City,

11   in particularly the central business district; and, secondly,

12   to guarantee a source of income for the MTA for transit

13   improvements.  And those theories go hand in hand.  So the

14   notion that because alternatives were excluded, for example,

15   because they could not raise sufficient funds, is perfectly

16   appropriate and well settled under environmental and NEPA

17   cases.

18           So with that basic background, without getting too

19   much into the merits, the Chan case has a single NEPA claim,

20   and the administrative record will demonstrate, as your Honor

21   noted, whether or not the Chan plaintiffs commented on the

22   draft and environmental assessment, which was subject to a

23   44-day comment period.

24           Second, that claim is the only claim right now in the

25   Chan case.  So let me switch for a moment to the other case,

O2CANEWC

1   the New Yorkers case.  There's a NEPA claim there.  That claim

2   is time barred.  Under the governing statutes, Section 139 of

3   the Transportation Act, that claim had to be filed by

4   November 27, 2023.  So the word "latecomers" applies.  That

5   claim is time barred.

6          Second, there's a claim that there should have been

7   some type of --

8          THE COURT:  And is that claim essentially duplicative

9   of the claim in the Chan case?

10          MR. CHERTOK:  As best one could tell, but it claims

11   various -- the New Yorkers case is focused more on the Lower

12   East Side.  The Chan case is focused on the Lower West Side,

13   but they both claim an inadequate assessment.  But under the

14   federal statutes, there's a notice issued in the Federal

15   Register in June of last year -- I think it was June -- which

16   required 150-day statute of limitations and that was not met.

17          There's a claim also --

18          THE COURT:  I guess my question was going to the

19   issues of -- if part of the objective is efficiency and

20   expediency, I would want to make sure that whatever I resolve

21   with respect to the Chan case, I wouldn't have to redo it in

22   connection with the New Yorkers Against Congestion Pricing,

23   Mr. Lester's case.  So I could imagine requiring briefing on

24   the statute of limitations question.  Or if what you're saying

25   is that the result of the Chan case, Chan is sufficiently

O2CANEWC

broadly pleaded that whatever I decide with respect to Chan
would be dispositive with respect to the first cause of action
under Mr. Lester's case, that also would address the question.

        MR. CHERTOK:  It's hard to tell the scope of the
arguments that would be made in Chan because we haven't seen
either an amended complaint, or more importantly, a summary
judgment motion.  But it would do two things.  One, it would
eliminate potential additional claims.  And, two, I believe it
would eliminate the class action claims because those claims
appear to be based on the NEPA claims.  So if there's no valid
NEPA claim, then there should be no class action claim.
Although, I don't think there is class action claim anyway
under the APA, but put that aside for a moment.

        The other claim that was raised under NEPA was the
notion that there has to be some kind of a reassessment or
supplement.  As Ms. Kaplan indicated, we're currently in the
middle of a review under the State Administrative Procedure Act
for the Triborough Bridge and Tunnel Authority to adopt a final
tolling structure.  In the EA, there was an evaluation of seven
scenarios with different amounts of credits, different amounts
of tolls, different exemptions, etc.  And so when the final
tolling structure is adopted, FHWA has already committed in the
FONSI to reevaluate to -- under the final tolling structure to
make sure the conclusions of the FONSI remain valid.  That
cannot occur until there's a final tolling structure, ergo the

O2CANEWC

1    claim for that supplementation is also unripe.

2            THE COURT:  Is there expected timing for those

3    actions?

4            MR. CHERTOK:  Yes, and I can give you that timing.

5    The hearings will be in late February, early March.  And a

6    decision by the Triborough Bridge and Tunnel Authority Board is

7    not expected before the end of March.  Once that decision is

8    made, then there will need to be a reevaluation.  I cannot tell

9    you how long FHWA would take.  It depends on I think to the

10   extent of the structure, the extent to which the toll structure

11   may vary from the different scenarios that were evaluated.  But

12   that evaluation will take place expectedly during the April,

13   May timeframe.  And I'm giving you rough estimates, your Honor.

14           Then, after that, there will be -- in order for the

15   tolling to commence, there needs to be an agreement between the

16   project sponsors, that is, TBTA and the New York City and state

17   Departments of Transportation with FHWA called the Value Pilot

18   Pricing Agreement.  I might have gotten those words inverted.

19   The VPPP for short.  Once that agreement is signed and

20   effective, then the actual tolling can start.  And as

21   Ms. Kaplan indicated, that's not expected before the middle of

22   June.

23           THE COURT:  But that it would be implemented by the

24   middle of June?

25           MR. CHERTOK:  Not sooner than the middle of June

O2CANEWC

1    because there's not an exact timeframe by either the decision

2    by the TBA Board, or more importantly, the extent and the

3    timing of the reevaluation by FHWA.  So there's no timeframe

4    that's required.  It could take fairly short.  It could take a

5    longer period of time.  There's no way to tell.

6             THE COURT:  The reason why I'm asking about the middle

7    of June has to do with the timing of motions.  I think it would

8    be in the interest of everybody here, without any promises to

9    be made by the Court, that if there is to be a holdup, it's not

10   as a function of either the lawyers here not being sufficiently

11   expeditious in their briefing and not giving me sufficient time

12   to look at the papers.

13            MR. CHERTOK:  Understood, your Honor.

14            THE COURT:  So not earlier than the middle of June,

15   but possibly sometime within the month of June if not a little

16   bit afterwards.

17            MR. CHERTOK:  Correct, your Honor.  And that's the

18   latest we have on a schedule.  If it changes, obviously, we

19   would inform the Court of that.

20            There is one other point I do want to make.

21   Mr. Lester includes a claim under the State Administrative

22   Procedure Act.  The claim is that there should have been more

23   extensive studies done on certain types of impacts on jobs,

24   etc.  That is based on the assumption that this is a rule

25   making.  And the MTA's position is that it is not a rule

O2CANEWC

1    making, it's a rate making, which does not require those type

2    of studies even though some of them are already included in the

3    environmental assessment.  So that would be potentially a

4    motion to dismiss under 12(b)(6).

5          THE COURT:  So to get back to the question I asked

6    Ms. Kaplan, if your arguments are all right -- and one of the

7    two of you can answer this -- why wouldn't the appropriate way

8    to handle it be to tee up those issues in Mr. Lester's case at

9    the same time as summary judgment is filed with respect to the

10   earlier filed case so that --

11         MR. CHERTOK:  We would propose to do that.  Our goal

12   is to have the most expeditious decision making that is

13   reasonable.  And in terms of the other claims that we think are

14   not ripe, for example, the supplement claim and the claim for

15   the Green Amendment, which is apparently going to be added,

16   those all depend on a final tolling structure, including the

17   Dormant Commerce Clause claim.  So there's no reason to have

18   those claims addressed now.  And once there's a decision under

19   NEPA on the adequacy of the FONSI, then those matters may be

20   moot, or more likely in our view, they can then proceed.  But

21   you can't really determine what the impacts are until there's a

22   final tolling structure and a reevaluation by the FHWA.

23         THE COURT:  Okay.

24         MS. KAPLAN:  If it makes sense, your Honor, what we

25   would propose to do is attempt to negotiate or consult with our

O2CANEWC

1    adversaries about a global schedule.  Some issues, as you heard

2    my colleague say, would require motions to dismiss, some would

3    require -- since you need the administrative records for

4    summary judgment, there's no reason those couldn't be made on

5    the same schedule because, as we have said, discovery here we

6    think would be inappropriate at this stage.  And if the parties

7    can't agree, we can come back to your Honor on that, but I

8    think we're on the same page getting this done all together, as

9    quickly, expeditiously, and efficiently as possible.

10           THE COURT:  And, Ms. Kaplan, with respect to the Chan

11   case, as to which I hear you talking about a motion for summary

12   judgment, do I need an answer in those cases before you proceed

13   to summary judgment, just as a procedural matter?

14           MS. KAPLAN:  In the New Jersey case, your Honor, there

15   were no answers before -- but we don't need an answer here.

16           THE COURT:  Okay.

17           MS. KAPLAN:  We waive that.  The only other thing I

18   wanted to touch on, your Honor, that you asked is global

19   settlement.  I just wanted to correct the record slightly.  In

20   the New Jersey case, there have been settlement discussions,

21   court-ordered settlement discussions, under the auspices of the

22   magistrate judge there, Wettre.  It may make sense -- and she's

23   quite familiar with some of these issues -- if there were to be

24   a global settlement procedure, to at least have her involved

25   because she's been dealing with this already for some time.

O2CANEWC

1          MR. CHERTOK:  And I would add one point, your Honor,

2     about the New Jersey case so it's clear.  The plaintiffs there

3     all sought -- the New Jersey plaintiffs sought to amend its

4     complaint to add the Dormant Commerce Clause and right to

5     travel claims, and the Court there denied that request to so

6     move because it was unnecessary at this point to make a

7     decision on that due to prematurity.  It also stayed the other

8     case which had class action -- has class action claims for

9     similar reasons.  There was no reason to tie up the Court, and

10    that could be a similar approach here, your Honor.

11         THE COURT:  Yeah.  But my understanding from the New

12    Jersey case is that one of the two cases before the judge was

13    significantly progressed, there was summary judgment motions

14    fully submitted, and the other had just been filed.  So this

15    case is one in which there haven't been motions filed in either

16    case.  I mean, while one of the two cases was filed

17    significantly earlier than the other, procedurally they're both

18    at essentially the same stage; isn't that right?

19         MR. CHERTOK:  That's correct in one sense.  The later

20    case, which has the class action, that case basically the

21    plaintiff has indicated all it will do is submit a letter

22    saying we agree with the NEPA claims brought by New Jersey and

23    presumably participate in the oral argument, which is set for

24    April at this point on that issue.  But the class action aspect

25    of that case has been stayed.

O2CANEWC

1          THE COURT:  Okay.  Ms. Kaplan, to the point of global
2    settlement.
3          MS. KAPLAN:  Yes, your Honor.
4          THE COURT:  Again, it's my preference not to get in
5    the middle of that and really to try to structure motion
6    practice and to decide the legal issues.  I would assume that
7    the MTA, as one of the largest if not the largest stakeholder
8    here, would be well suited --
9          MS. KAPLAN:  I think that's correct.
10         THE COURT:  -- to coordinate with all of the
11   interested parties to make sure that settlement discussions go
12   forward; is that a fair assumption?
13         MS. KAPLAN:  I think it's a fair assumption, your
14   Honor.  I think we're the only party that would be involved for
15   sure in all the settlement discussions, so that makes complete
16   sense, your Honor.
17         THE COURT:  And when you offer to meet and confer with
18   respect to a motion schedule, did you have a timetable in mind?
19         MS. KAPLAN:  We had been talking preliminarily on our
20   side, but we haven't talked with the other side.  Again, we
21   would want to tee it all up so it would be ready for your
22   decision with a period of time in accordance with the mid-June
23   dates we had been talking about.
24         THE COURT:  I guess what I had in mind is by when
25   would you be prepared to send me a letter with a proposed

O2CANEWC

1    schedule?  What's your druthers?

2                MS. KAPLAN:  Very shortly, your Honor.  Within the

3    next -- certainly this week, within the next couple days.

4    Honestly, to be quite honest, your Honor, we're coordinating

5    with some vacation schedules for counsel.  So as soon as we get

6    that squared away and can talk to the other side, we can submit

7    certainly, certainly by the end of this week.

8                THE COURT:  Okay.

9                MS. KAPLAN:  And, again, I think summary judgment and

10   motion to dismiss could essentially happen at the same time.

11   That's what happened in the case I litigated because these are

12   essentially all the same issues here.

13               THE COURT:  So is there anybody else for the MTA who

14   feels the need to be heard?

15               Okay.  And I think I heard from the Office of the

16   Attorney General.  Is that -- no, I didn't.  Mr. Taylor, you

17   represent -- I'm sorry, the gentleman next to Ms. Kaplan is

18   also from Kaplan Hecker?

19               MR. CHERTOK:  No.  I'm from Sive, Paget & Riesel and

20   we're cocounsel for MTA, TPA.

21               THE COURT:  Got it.  So let me now turn to Mr. Frank,

22   to the New York Attorney General's Office, and then to the New

23   York City Law Department to see what you have to add.

24               MR. FRANK:  Good morning, your Honor.  Not much to

25   add.  We agree with Mr. Chertok as to the general description

O2CANEWC

1   of the adequacy and thoroughness of the environmental review.

2   So we do not believe that there are any flaws here that the

3   Court could provide a relief on.

4          In terms of the litigation structure going forward, we

5   buy and large agree with what Ms. Kaplan has laid out, either

6   motions to dismiss or motions for summary judgment, they could

7   be done at the same time.  We have not had a chance to talk --

8   I've not had a chance to talk to my client in terms of whether

9   we have a ground to dismiss the Chan case as opposed to just

10  want to go straight to summary judgment.  Particularly, since

11  as we've just learned this morning some of the other claims may

12  be added, the Dormant Commerce Clause, Green Amendment, right

13  to travel.  So I will need to talk to my client there.

14         Having said that, whatever the outcome might be, I

15  would imagine that we will be able to work with counsel for the

16  MTA and Triborough so that whatever we would like to do is not

17  going to upset the apple cart and make the litigation any more

18  time consuming than it needs to be.  And one other thing I

19  would need to confer with my client about is whether or not we

20  waive an answer.  And on both of those later points, I am not

21  taking a position at this point as to, you know, what exactly

22  we want to do.  I just want to note for the Court that I will

23  need to speak to my client about that.  But I think those

24  conversations could happen pretty soon and so we would be able

25  to stay on the schedule that Ms. Kaplan has laid out for

O2CANEWC

1    getting more information to your court by the end of the week.

2                THE COURT:  Okay.  Counsel for the law department, and

3    then last but not least, the federal defendants.

4                MR. TAYLOR:  Thank you, your Honor.

5           I'm Nathan Taylor for New York City Department of

6    Transportation.  We agree with MTA that in the New Yorkers

7    Against Congestion Pricing case, that none of the causes of

8    action at this point can survive a motion to dismiss, and we

9    intend to make such a motion.  We also agree that in the Chan

10   case, it would be appropriate to coordinate schedules for

11   summary judgment, but the city is prepared to participate in

12   any global discussions on either scheduling or global

13   settlement negotiations.  We don't expect to play the lead role

14   in any of these discussions, but we are very happy to

15   participate.  I also have not had a chance to speak with my

16   client on the issue of waiving an answer, but we'll also

17   provide that response soon.

18               THE COURT:  All right.  For the federal defendants?

19               MR. BANNON:  Zach Bannon from the U.S. Attorney's

20   Office.  I also have little to add and agree with everything

21   that's been said by cocounsel here and would say that if there

22   are going to be global settlement conversations, they likely

23   will not have detailed involvement from the federal defendants

24   on those conversations.  In light of the EPA causes of action

25   here, we're of course happy to participate if the other parties

O2CANEWC

1    would like them but otherwise are happy with the schedule

2    that's been laid out.

3              THE COURT:  Okay.  Before I turn back to the

4    plaintiffs, I do have one thought that I wanted to share with

5    the plaintiffs, and maybe it's a bit of a request also, which

6    is, there are a lot of you, and I'm thinking about what it's

7    going to look like if I have lengthy motion papers from each of

8    you essentially repeating the same arguments.  I'm not going to

9    require you to file a single memorandum, unless you are willing

10   to undertake that.  You each have your own respective clients.

11   But I am going to ask you when you meet and confer to meet and

12   confer with respect to whether there is one party who might

13   take the lead in making the arguments common to the defendants,

14   and then others who would just be simply content with relying

15   upon the arguments made by that party.  If part of the

16   objective is to get a quick decision, one way to make that

17   difficult is for you each to file lengthy briefs.

18             So, Ms. Kaplan, that's on your to-do list.

19             MS. KAPLAN:  Understood, your Honor.  We will

20   undertake that.

21             THE COURT:  Okay.  All right.  Let me turn back to

22   Mr. Klinger first.

23             Mr. Klinger, is there any way, first of all, that you

24   can file your amended complaint by a week from today?

25             MR. KLINGER:  We will endeavor to do so, your Honor.

O2CANEWC

1          THE COURT:  Okay.  So the amended complaint will be

2     filed by February 19.  That will permit there to be some

3     briefing with respect to the amended complaint.

4          Let me hear you about meeting and conferring with the

5     plaintiffs and teeing up the motion practice.  What I also have

6     in mind is that if you have a request for discovery, teeing up

7     whether discovery is appropriate at least with respect to the

8     environmental law claims, the Dormant Commerce Clause claims,

9     if you assert that they may not be ripe and obviously raise

10     different issues with respect to discovery.

11          MR. KLINGER:  They do, your Honor.  And I want to just

12     address one aspect of what was said earlier by MTA counsel.

13          We understand, your Honor, that this project has been

14     out there for four years or so.  On the other hand, what I

15     think is being missed, your Honor, is that it wasn't until

16     spring 2023 that the FONSI was put out.  And, your Honor, it

17     wasn't until mid-December, just recently, that the tolling

18     program was put out that there was a decision made.  And, your

19     Honor, some of the issues that are in Mr. Lester's complaint,

20     the claims, are in the Mulgrew and Staten Island present action

21     in the Eastern District of New York.  So we're familiar with

22     the issues there and the notion, your Honor, one, that if the

23     implication was that any of the plaintiffs' groups have been

24     sitting on this and only at the last minute are coming in, it

25     wasn't until December that the public knew what the actual plan

O2CANEWC

1    was going to be.

2              The other thing which is curious is you heard, your

3    Honor, the acknowledgment from the defendants that there

4    actually now has to be a reexamination now that there actually

5    is a tolling plan, and there actually isn't even a tolling plan

6    now because you have this subsequent comment period and

7    hearing.  So I'm not exactly sure how anything can be time

8    barred.

9              THE COURT:  I don't hear an argument being made that

10   your complaint is time barred.

11             MR. KLINGER:  Well, you're going to hear it in the

12   Mulgrew case, your Honor, if that gets transferred here.  But,

13   your Honor, if you think about it, if the defendants were --

14             THE COURT:  So, help me again.  If the principal

15   request is for declaratory and injunctive relief, isn't that

16   relief ordered in one case going to be sufficient with respect

17   to all cases?  If I enjoin the congestion pricing plan for

18   failure to have implemented an environmental impact statement,

19   then, you know, whether the folks in New Jersey are going to be

20   benefited from that or only the folks in the Lower East Side,

21   it's a matter of indifference.  The plan is still going to be

22   suspended, so --

23             MR. KLINGER:  You're right.  That's right, your Honor.

24   But the question is if you want to talk about efficiency, if --

25   look, the MTA has said, your Honor, not only did they say, you

O2CANEWC

1  know, in connection with the review that the MTA has heard from

2  the Federal Highway Administration that they will be fast

3  tracking the MTA's environmental process, which will certainly

4  get the MTA moving forward towards being able to realize this

5  source of funds and institute this congestion pricing, not only

6  did they say that then, but what they've said, your Honor,

7  now -- and I'm not saying that this was with the advice of

8  counsel -- what they said now in response to all of the

9  lawsuits that have been filed, they've said, your Honor, it's

10 nothing to them, we're going forward.  And, whatever, I'm not

11 technologically savvy, whatever the mechanism is that will

12 implement the tolling, they're going up around, all around the

13 city right now.  The MTA has basically said that, you know, it

14 doesn't really matter, it's a foregone conclusion what is going

15 to happen.

       And I would believe, your Honor, that there will

16 

17 likely be -- but you can't say for sure -- that there's likely

18 going to be a new wave of challenges when it comes out that

19 they're not changing anything.

20        THE COURT:  Let me interrupt you for a second because

21 I do have a question for counsel for the MTA, which goes to the

22 point of there being different cases.

23        I don't have any New Jersey residents I don't think in

24 this case.  If one of the arguments that would be made in New

25 Jersey, or frankly for that matter made in the Eastern District

O2CANEWC

1    of New York, would be, Judge, don't look at the complaints that

2    the administrative agency failed sufficiently to consider the

3    New Jersey people or the people in the Eastern District because

4    they're not plaintiffs in this case; is that the type of

5    argument you imagine making?  If so, it's sort of readily cured

6    by having the plaintiffs in those cases join the case that's

7    before me and that was timely filed.

8         MS. KAPLAN:  Yes, your Honor.  I mean, we agree to the

9    extent that the New York cases, the cases involving people who

10   live in New York, which is the EDNY case and the case before

11   your Honor, should be decided together by one judge.  It's just

12   completely inefficient to do it any other way.  To use a fancy

13   legal phrase, your Honor, New Jersey is New Jersey.  And that's

14   happening in New Jersey right now.  And, again, a newly

15   assigned judge, but you know the status in those cases.

16        THE COURT:  All right.  Let me turn back to you,

17   Mr. Klinger.  I apologize for interrupting you.

18        MR. KLINGER:  No, your Honor.  I think your Honor has

19   the gist of what we are saying.  I mean, there is a new comment

20   period, and as of this date we actually don't have a congestion

21   pricing plan.

22        THE COURT:  No, I heard that.  I understand that there

23   is more work to be done before there is a plan that can go into

24   effect.

25        MR. KLINGER:  And the one thing, your Honor, which I

O2CANEWC

1    think I speak for Mr. Lester, correct me if I'm wrong, or our

2    cocounsel in the Mulgrew case, what we don't want, your Honor,

3    is to hear with all the claims that things aren't ripe yet.

4    That's what we're hearing, you're too late, you're too early,

5    you're nowhere to be had.  What we think would be quite unfair,

6    your Honor, is to be told at some point in the future, the plan

7    is so far advanced, how can you do anything about it.  That's

8    why we're here now.  That's why we've brought the claims that

9    we have in the Eastern District action, which is the Dormant

10   Commerce Clause and the right to travel.  We understand what

11   defendants' arguments are going to be there, but we wanted to

12   make sure that these issues are before not only the Court, but

13   before the parties in connection with the supplemental review

14   that they've acknowledged has to be undertaken.

15         THE COURT:  And will you meet and confer with

16   Ms. Kaplan either right after this conference or certainly by

17   the end of the day today with respect to whether your position

18   with respect to transferring the Eastern District case to me,

19   or at least if you're not agreeing to that, to a motion

20   schedule so that the letter that I get at the end of this week

21   is one that would reflect either that there will be a motion

22   sub judice with respect to the Eastern District, or that

23   there's consent by both parties to moving the Eastern District

24   case here.

25         MR. KLINGER:  The answer, your Honor, is I would just

O2CANEWC

1    ask until tomorrow because I have to reach cocounsel in

2    addition to reaching our respective parties.  But we will

3    have -- we will have an answer to Ms. Kaplan tomorrow if that

4    is all right.

5              MS. KAPLAN:  Thank you, Mr. Klinger.

6              THE COURT:  All right.  Mr. Klinger, anything I should

7    hear from you -- I'm sorry, I meant Mr. Lester.

8              MR. LESTER:  Thank you.  I think two points.  The

9    State Administrative Procedure Act is intertwined with the NEPA

10   review because the state's position, the MTA, and the Federal

11   Highways' position, is that the FONSI is not finalized until

12   they complete the SAPA review.  So it has to be more than rate

13   making.  This is inextricably intertwined with the whole

14   environmental review process.  So the fact that they would on

15   the one hand say NEPA has not been finalized because of the

16   State Administrative Procedure Act, and then on the other hand

17   say it's merely rate setting, I think is contradicted by the

18   record and by their own statements.

19             THE COURT:  Okay.

20             MR. LESTER:  So I would just make that point in terms

21   of statute of limitations and the ripeness argument.

22             THE COURT:  Okay.  I'm sure I'll hear more about that

23   in opposition to defendants' motion.

24             MR. LESTER:  Right.  I mean, I knew we weren't getting

25   into the merits today, but since they raised it, I thought I'd

O2CANEWC

1    respond.

2           THE COURT:  Okay.  So, Ms. Kaplan, by the end of the

3    day on Friday you will submit to me a letter reflecting a

4    proposal by the defendants, hopefully agreed to by the

5    plaintiffs, with respect to motion practice on the two cases.

6    I would appreciate you also, in addition to thinking about how

7    to coordinate the motion papers so that they're not

8    duplicative, thinking about something like what I understand is

9    being done in the District of New Jersey, that in addition to

10   the filing of the complete certified administrative record,

11   that there be some process for identifying those portions of

12   the administrative record that will be pertinent to the

13   motions.  And I assume from the plaintiffs' perspective, you're

14   going to cooperate with the defendants on that?

15          MR. KLINGER:  Certainly, your Honor.

16          MR. LESTER:  Yes.

17          THE COURT:  Okay.  I'm obviously not going to judge

18   the matter that's before Judge Gujarati in terms of the

19   transfer issue.  But the plaintiff in the New Jersey action,

20   who's also plaintiff's counsel here, will meet and confer with

21   Ms. Kaplan by the end of the day tomorrow with respect to the

22   transfer issues.

23          There's no issue right now about discovery before me,

24   but so I would encourage Mr. Klinger to tee that up quickly

25   after the filing of an amended complaint.  What I do have in

O2CANEWC

1   mind is resolving the environmental law issues as expeditiously

2   and efficiently as I can, and leaving, if there are Dormant

3   Commerce Clause issues, leaving them out there to be litigated

4   outside of the motion practice.

5          MR. KLINGER:  Understood, your Honor.

6          THE COURT:  Is there anything else from plaintiffs

7   that we should address today?

8          MR. LESTER:  Yes, I think we probably also join in the

9   Green Amendment issue, especially because we have these

10  environmental justice communities that require special

11  protection.

12         THE COURT:  Okay.  Anything --

13         MR. KLINGER:  One last thing, your Honor, very

14  quickly.  And I just want to make clear to the Court the

15  Eastern District action is heavily focused on Staten Island.

16  If the client's decision is made not to consent to transfer, we

17  understand that a motion would be made.  We just don't want the

18  Court to take any affront about your Honor's role.

19         THE COURT:  I won't take any affront, and I'll leave

20  it at that.

21         Anything else from the defendants' table?

22         MS. KAPLAN:  Nothing, your Honor.

23         THE COURT:  Okay.  Have a good day, everyone.  Thank

24  you.

25         (Adjourned)