**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ELIZABETH CHAN, *et al.*,

                Plaintiffs,

        v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION, *et al.*,

                Defendants.

Case No. 23-cv-10365-LJL
[rel. 1:24-cv-01644-LJL]
[rel. 1:24-cv-000367-LJL]

**Oral argument requested**

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT STEPHANIE WINKELHAKE'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 2

    A.    Plaintiffs' Claims ................................................................................................. 2

    B.    Congestion Pricing in New York ....................................................................... 2

    C.    The National Environmental Policy Act ............................................................ 3

    D.    NYSDOT's Role as Project Sponsor of New York's Congestion Pricing Plan .............. 4

ARGUMENT ............................................................................................................................ 6

I.    Sovereign Immunity Does Not Bar Federal Claims Against Defendant Winkelhake Because The Complaint Alleges An Ongoing Violation Of Federal Law And Seeks Prospective Relief ................................................................................................. 6

CONCLUSION ...................................................................................................................... 13

**<u>TABLE OF AUTHORITIES</u>**

**Cases**                                                                                               **Page(s)**

*Carvel v. Cuomo,*
   357 F. App'x 382 (2d Cir. 2009) ..............................................................................11

*In re Charter Oak Associates,*
   361 F.3d 760 (2d Cir. 2004).......................................................................................6

*Citizens for Smart Growth v. Sec'y of Dep't of Transp.,*
   669 F.3d 1203 (11th Cir. 2012) ...............................................................................13

*Collins v. City University of New York,*
   No. 21 Civ. 9544 (NRB), 2023 WL 1818547 (S.D.N.Y. Feb. 8, 2023) .................10

*In re Dairy Mart Convenience Stores, Inc.,*
   411 F.3d 367 (2d Cir. 2005)...................................................................................7, 8

*Fund for Animals, Inc. v. Lujan,*
   962 F.2d 1391 (9th Cir. 1992) .................................................................................12

*Garcia v. Akwesasne Hous. Auth.,*
   268 F.3d 76 (2d Cir. 2001)......................................................................................12

*Kostok v. Thomas,*
   105 F.3d 65 (2d Cir. 1997)........................................................................................6

*McKethan v. N.Y. State Dep't of Corr. Servs.,*
   No. 10 CIV. 3826 PAE, 2012 WL 2367033 (S.D.N.Y. June 21, 2012) ...............7, 8

*Nat'l Audubon Soc'y v. Hoffman,*
   132 F.3d 7 (2d Cir. 1997)..........................................................................................4

*Papazoni v. Shumlin,*
   No. 5:15-cv-00056, 2015 WL 7281634 (D. Vt. Nov. 17, 2015), *appeal
   dismissed*, No. 15-4025, 2016 WL 11848846 (2d Cir. Sept. 7, 2016)....................11

*Pugh v. Goord,*
   571 F. Supp. 2d 477 (S.D.N.Y. 2008).......................................................................8

*Saba v. Cuomo,*
   535 F. Supp. 3d 282 (S.D.N.Y. 2021).......................................................................6

*Selevan v. N.Y. Thruway Auth.,*
   584 F.3d 82 (2d Cir. 2009)......................................................................................10

*Seneca Nation v. Hochul,*
   58 F.4th 664 (2d Cir. 2023) .......................................................................................6

*Surprenant v. Mass. Tpk. Auth.*,
    Civ. A. No. 09-CV-10428-RGS, 2010 WL 785306 (D. Mass. Mar. 4, 2010) ........................10

*Ex parte Young*,
    209 U.S. 123 (1908) ............................................................................................... *passim*

**Statutes**

42 U.S.C. § 4332(2) ....................................................................................................3, 12

Civil Rights Act Title VII .................................................................................................12

N.Y. Tax L. § 606(jjj) (2021) ............................................................................................2

N.Y. Veh. & Traf. L. § 1704-a (2021) ...............................................................................2

NEPA ......................................................................................................................... *passim*

Traffic Mobility Act ...........................................................................................2, 3, 4, 7

**Other Authorities**

23 C.F.R. § 771.109 (2023) ...............................................................................................3

23 C.F.R. § 771.119(i) ....................................................................................................3, 5

40 C.F.R. § 1500.1(a) (2023) ............................................................................................3

40 C.F.R. § 1501.6 ............................................................................................................4

Eleventh Amendment ..................................................................................................6, 8, 9

Federal Rule of Civil Procedure 25(d) ..............................................................................1

## PRELIMINARY STATEMENT

The New York State Department of Transportation ("NYSDOT") and its Chief Engineer, Stephanie Winkelhake,[1] have spent the past five years deeply involved in New York's Congestion Pricing Plan ("the Plan"), including developing the Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI") that are the primary object of Plaintiffs' challenge. They also have an array of ongoing responsibilities regarding the Plan's implementation, such as entering into a tolling agreement with the Federal Highway Administration ("FHWA") under the federal Value Pricing Pilot Program ("VPPP"), implementing mitigation measures, and utilizing NYSDOT's roadways in the installation and collection of the Plan's tolls. Moreover, should this Court prospectively order that a full Environmental Impact Statement ("EIS") be prepared pursuant to Count I or a supplemental evaluation be performed pursuant to Count II of the First Amended Complaint, ECF 34 ("FAC"), that deep involvement would continue.

Winkelhake does not deny the past involvement of NYSDOT and its Chief Engineer (Nicolas Choubah, followed by Winkelhake), nor their ongoing role. Instead, Winkelhake attempts to artificially separate her integrated and active role in the challenged approval of the Plan and its ongoing implementation from Plaintiffs' claims based on the doctrine of sovereign immunity. ECF 62 ("Winkelhake Mot."). No such distinction exists. Well-settled principles provide that sovereign immunity does not apply to the actions of Winkelhake in her official capacity because the FAC alleges an ongoing violation of federal law and seeks prospective relief.

---

[1] Plaintiffs originally named Winkelhake's predecessor, Nicolas A. Choubah, as Defendant in this lawsuit based on his role as NYSDOT's Chief Engineer. ECF 34 ¶ 44. Under Federal Rule of Civil Procedure 25(d), when a public officer ceases to hold office, the "officer's successor is automatically substituted as a party." *Id.*; Winkelhake Mot. at 1. Accordingly, any references to Choubah apply with equal force to Winkelhake.

*See Ex parte Young*, 209 U.S. 123 (1908).  Accordingly, the Court should deny Winkelhake's motion to dismiss.

## FACTUAL BACKGROUND

A.      *Plaintiffs' Claims*

Plaintiffs assert claims under the National Environmental Policy Act ("NEPA") (Counts I and II), the Dormant Commerce Clause (Count III), the Privileges and Immunities Clause (Right to Travel) (Count IV), and New York's Green Amendment (Count V) in response to the New York's Congestion Pricing Plan.[2]

B.      *Congestion Pricing in New York*

In April 2019, the New York State Legislature passed the Traffic Mobility Act.  *See* FAC, ECF 19 ¶ 78.  The Traffic Mobility Act authorized the Triborough Bridge and Tunnel Authority ("TBTA")[3] to charge vehicles entering or remaining in the CBD a substantial toll to fund the Metropolitan Transportation Authority ("MTA") capital program, while reducing traffic congestion within the CBD.  N.Y. Veh. & Traf. L. § 1704-a(1) (2021); FAC ¶ 61.

The Traffic Mobility Act imposed just two requirements for the Plan,[4] leaving all remaining details to MTA and its appointed Traffic Mobility Review Board ("TMRB").  *Id.* § 1704-a(3), (4).  Based on TMRB's recommendations, MTA would set the toll price for different types of vehicles, the time period when the toll would be operative, credits to cars that access the

---

[2] Plaintiffs do not assert Count V (New York State's Green Amendment) against Defendant Winkelhake.

[3] TBTA is an affiliate of MTA and does business as MTA Bridges and Tunnels.  Accordingly, this brief refers to TBTA as MTA.

[4] These requirements include:  (1) an exemption for qualifying vehicles transporting persons with disabilities and authorized emergency vehicles; and (2) tolling passenger vehicles entering or remaining in the CBD no more than once per day.  N.Y. Veh. & Traf. L. § 1704-a(1), (2).  Additionally, the State would provide tax credits equal to the amount of tolls paid per year for residents of the CBD with an adjusted gross income of less than $60,000.  N.Y. Tax L. § 606(jjj) (2021).

CBD through bridges and tunnels and already pay a toll, discounts to applicable vehicles and drivers, how to address for-hire vehicles (*i.e.*, taxis and ride-share vehicles), and exemptions from the toll.  *See id.*; AR 29 at 2-30 to 2-34.[5]  Following the Traffic Mobility Act's enactment, the MTA, NYSDOT, and New York City Department of Transportation ("NYCDOT") (collectively, the "Project Sponsors") began developing proposals for Congestion Pricing and submitted an Expression of Interest to FHWA, seeking tolling authority under the federal Value Pricing Pilot Program ("VPPP") to implement the program.  AR 29 at 0-1.  To approve the Plan under the VPPP, FHWA was required to perform an environmental review under NEPA.[6]  23 C.F.R. § 771.109 (2023).

C.      *The National Environmental Policy Act*

In 1970, Congress passed NEPA "to ensure Federal agencies consider the environmental impacts of their actions in the decision-making process."  40 C.F.R. § 1500.1(a) (2023).  Under NEPA, the lead agency funding, authorizing, or implementing a proposed action—here, FHWA— must conduct and prepare an Environmental Assessment ("EA") analyzing the proposed action's direct, indirect, and cumulative impacts to determine whether or not the action would "significantly affect[] the quality of the human environment," accounting for any planned mitigation.  42 U.S.C. § 4332(2)(C).  If the lead agency finds that the action is likely to significantly affect the quality of the human environment, the agency must prepare an Environmental Impact Statement ("EIS").  40 C.F.R. § 1501.5(c)(1); 23 C.F.R. § 771.119(i).  Should the lead agency find that the proposed action will have no significant impact on the environment, it may issue a Finding of No Significant

---

[5] "AR" cites are to the Administrative Record filed in this action on February 27, 2024 (ECF 41-1).

[6] To date, FHWA has not finally approved the Plan pursuant to the VPPP.

Impact ("FONSI"). 40 C.F.R. § 1501.6. If the decision is a "close call," the agency should prepare an EIS. *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 13 (2d Cir. 1997).

     D.    *NYSDOT's Role as Project Sponsor of New York's Congestion Pricing Plan*

In July 2020, NYSDOT appointed Nicolas Choubah as its Chief Engineer where he managed the Engineering Division and oversaw NYSDOT's multi-billion-dollar capital program.[7] FAC ¶ 44. On March 30, 2021, FHWA authorized the Project Sponsors to proceed with a NEPA Class III action, which called for the creation of an EA to determine whether the Congestion Pricing Plan was likely to have a significant environmental affect. FAC ¶ 66. As a co-Project Sponsor of the Plan, NYSDOT helped establish specific objectives for the program which include: (1) reducing daily vehicle-miles traveled ("VMT") within the CBD by at least five percent; (2) reducing the number of vehicles entering the CBD daily by at least ten percent; (3) creating a funding source for capital improvements and generating sufficient annual net revenues to fund $15 billion for capital projects for the MTA Capital Program; and (4) establishing a tolling program consistent with the purposes underlying the Traffic Mobility Act. AR 29 at ES-7.

NYSDOT worked closely with FHWA, MTA, and NYCDOT to develop the EA[8] and FONSI,[9] which were published in May and June 2023, respectively. FAC ¶¶ 73, 79. In fact, Defendants identified Choubah as one of four Project representatives, and someone who helped prepare the EA and FONSI, both of which he signed. AR 29 at 1-19, DOT_0036153, DOT_0037104; AR 361 at DOT_0000363; FAC ¶ 44. While the FONSI acknowledged the "potential adverse effect[s]" for air quality, subway ridership, increased congestion due to traffic

---

[7] Engineering News Record, Nicolas Choubah, https://www.enr.com/infrastructure-forum/speakers/nicolas-choubah (last visited Apr. 3, 2024).

[8] The EA is available at https://new.mta.info/document/111101.

[9] The FONSI is available at https://new.mta.info/document/114186.

diversions on exempted thoroughfares, and that "some [environmental justice] communities that are already overburdened by pre-existing air pollution and chronic diseases could see an adverse effect as a result of increased traffic," AR 361 at 4, 6-7, 12-14, it summarily concluded that—with mitigation developed by the Project Sponsors—Congestion Pricing would have "no significant impact on the human or natural environment," AR 361 at DOT_0000363; FAC ¶ 23, absolving the Project Sponsors of their duty under NEPA to prepare an EIS to fully analyze possible environmental harms associated with the program.  23 C.F.R. § 771.119(i).

In late 2023, Choubah retired, and Winkelhake replaced him as NYSDOT's Chief Engineer.  *See* Winkelhake Mot. at 1.  Subsequently, on November 30, 2023, TMRB published its recommended toll price and structure,[10] FAC ¶ 126, which was adopted by MTA with certain changes on March 27, 2024.[11]  At this time, remaining steps in the federal approval process include a re-evaluation (and possible supplementation) by FHWA and an agreement between FHWA and Project Sponsors to enter into the VPPP.  AR 361 at 26.  Project sponsors have a continuing role in the re-evaluation and contracting process.

Tolling is set to begin in June 2024,[12] and NYSDOT's (and its Chief Engineer's) responsibilities remain ongoing.  For example, NYSDOT is listed as the "Implementation Lead" for certain mitigation measures identified in the EA, including to implement electric truck charging infrastructure using funds raised in the Congestion Pricing Program, AR 29 at ES-22 to ES-23, and has control over certain roadways subject to the toll.  *Id.* at ES-28, ES-39; *see also* Winkelhake Mot. at 5 (stating NYSDOT maintains responsibility for "installing charging stations for electric

---

[10] The TMRB Recommendation is available at https://new.mta.info/document/127761.

[11] MTA, MTA Board Meeting on March 27, 2024 Minutes, in MTA Board Action Items, at 14-15 (Mar. 29, 2023), https://new.mta.info/document/135591.

[12] MTA, *Cent. Bus. Dist. Tolling Program*, https://new.mta.info/project/CBDTP (last visited Apr. 3, 2024) ("In June 2024, New York City will implement the nation's first congestion pricing program.").

trucks, monitoring traffic conditions on state highways, implementing traffic management measures such as installing signage to address changes in traffic patterns, and planting vegetation to reduce air pollution from changes in traffic patterns"). These mitigation measures are required for the Plan's implementation to maintain its FONSI—to the extent a FONSI was ever appropriate, which it was not—and also represent a local benefit that must be balanced with the Plan's harms.

## **ARGUMENT**

I. **Sovereign Immunity Does Not Bar Federal Claims Against Defendant Winkelhake Because The Complaint Alleges An Ongoing Violation Of Federal Law And Seeks Prospective Relief**

Despite NYSDOT and Winkelhake's clear and substantial involvement in the Plan, Defendant Winkelhake has moved to dismiss Plaintiffs' FAC under the Eleventh Amendment's doctrine of sovereign immunity. *See* Winkelhake Mot.[13] The Eleventh Amendment bars suits against states and their agencies for claims of violating state or federal law. *In re Charter Oak Associates*, 361 F.3d 760, 765 (2d Cir. 2004). However, under the *Ex parte Young* exception, a party may sue state officials acting in an official capacity, and the "court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks prospective relief." *Seneca Nation v. Hochul*, 58 F.4th 664, 670 (2d Cir. 2023) (citation omitted); *Kostok v. Thomas*, 105 F.3d 65, 68 (2d Cir. 1997) (citations omitted) ("If an act by a state violates the federal Constitution or federal law, . . . then the enforcing state actor loses official immunity."); *Saba v. Cuomo*, 535 F. Supp. 3d 282, 300 (S.D.N.Y. 2021) (this Court stating that declaratory and injunctive relief is considered prospective). This is because "[t]he state has no

---

[13] If the Court denies her motion to dismiss, Winkelhake also seeks partial summary judgment in her favor, and opposes summary judgment for Plaintiffs for the reasons stated in the summary judgment motion and opposition papers filed by MTA. Winkelhake Mot. at 1-2. Accordingly, this brief solely responds to Winkelhake's sovereign immunity claims as outlined in her motion to dismiss. Plaintiffs address Defendants' summary judgment arguments in a separate brief, also submitted on April 15, 2024.

power to impart to [an officer] any immunity from responsibility to the supreme authority of the United States." *Ex parte Young*, 209 U.S. at 160 (citation omitted).  The *Ex parte Young* exception requires only that the official "have a connection with the act, and nothing more."  *McKethan v. N.Y. State Dep't of Corr. Servs.*, No. 10 CIV. 3826 PAE, 2012 WL 2367033, at *2 (S.D.N.Y. June 21, 2012) (citation omitted).

A straightforward inquiry clearly shows that Plaintiffs allege an ongoing violation of NEPA and the federal Dormant Commerce Clause and Privileges and Immunities Clause and seek prospective relief based on Winkelhake's (and other Defendants') connection with the Congestion Pricing Plan.  *See generally* FAC at 49 (requesting injunctive and declaratory relief), ¶¶ 144-201 (alleging continued violation of NEPA and federal constitution); *see also In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 373 (2d Cir. 2005) (citation omitted) ("Dairy Mart's complaint alleges that Kentucky officials are in continued violation of federal law and thus clearly satisfies the straightforward inquiry test.").

Winkelhake admits that NYSDOT, "as a Project Sponsor of the congestion pricing program, participated in preparation of the environmental assessment that the [FHWA] issued and relied on in issuing its [FONSI] under NEPA, and Ms. Winkelhake's predecessor signed that assessment on behalf of the Department in its role as Project Sponsor."  Winkelhake Mot. at 12. As such, Winkelhake would also have a role in the supplemental review that Plaintiffs contend is required by law and seek be directed by this Court due to substantial changes in the Plan after publication of the FONSI.  Winkelhake further admits that NYSDOT retains responsibility for implementing an array of mitigation measures.  *Id.* at 5, 13-14.  Yet, Winkelhake improperly seeks to narrow *Ex parte Young's* applicability to those that the Traffic Mobility Act provides with explicit "authority to set or collect any congestion tolls."  *Id.* at 3, *see also id.* at 13 ("But even if

there were such a [constitutional] violation, it would arise from the tolls over which the Department and its chief engineer have no responsibility.").

Contrary to Winkelhake's contention, the Second Circuit has held that a defendant's duties need not be noted in the act. *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d at 373 (citing *Ex parte Young*, 209 U.S. at 157). Instead, *Ex parte Young* "require[s] only that a defendant have a 'connection' with the act, and not more." *Pugh v. Goord*, 571 F. Supp. 2d 477, 517 (S.D.N.Y. 2008) (citing cases). In *Pugh*, the district court found that an officer had personal involvement in, and thus a sufficient connection with, the act at issue where the officer "was consulted" and "espoused views" that led to the creation of the allegedly unconstitutional policy. *Id.* at 514-15. In contrast, the court in *McKethan*, 2012 WL 2367033, found that a defendant was properly dismissed under the Eleventh Amendment where the official had been retired for two years and "no longer ha[d] any connection to any action taken or not taken by" the agency, so an injunction would be futile. *Id.* at *2.

Here, NYSDOT (through its Chief Engineer) did far more than consult and espouse views regarding the Plan. They worked as the Plan's Sponsor and admit they helped prepare the operative documents at issue. *See* Winkelhake Mot. at 12. Moreover, NYSDOT's role in the Plan remains ongoing. Once FHWA (likely) determines that the effects of the final tolling rates and structure are consistent with the decision to issue a FONSI, NYSDOT will work with the other Project Sponsors and FHWA to enter into a tolling agreement to enter into the VPPP. AR 361 at 26; *see also In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d at 373 (rejecting argument that there was no continuing violation of law where wrongful acts occurred in the past because there were still more potential steps in the process). Once the Program is accepted into the VPPP, the

Project Sponsors have an array of continuing responsibilities, including collecting tolls and implementing mitigation and monitoring programs.  *See, e.g.*, AR 29 at ES-28, ES-44 to ES-46.

Aside from the significant responsibilities shared among the Project Sponsors, NYSDOT, in particular, is charged with allocating millions of dollars raised through Congestion Pricing to implement electric truck charging infrastructure.  AR 29 at ES-22 to ES-23.[14]  Further, NYSDOT owns, maintains, and monitors the relevant segments of the Long Island Expressway, I-95, and the FDR Drive, and will coordinate to implement certain transportation demand management measures, which will determine mitigation measures necessary to address several of the harms Plaintiffs raise concerns about.  AR 29 at ES-28, ES-39.  NYSDOT has also allowed and continues to allow the Plan to utilize its roadways in the installation and collection of the tolls.   Lastly, NYSDOT is tasked with allocating millions of dollars in toll funds directed at mitigation such as planting vegetation to reduce air pollution from changes in traffic patterns.  Winkelhake Mot. at 5. Mr. Choubah, through his role as Chief Engineer of NYSDOT, is the only NYSDOT official who signed and was referenced in the EA and FONSI as one of four Project representatives.  *See* AR 29 at 1-19, DOT_0036153, DOT_0037104; AR 361 at DOT_0000363.  Accordingly, Mr. Choubah (and his replacement, Ms. Winkelhake) maintains a sufficient "connection" to Congestion Pricing and can properly be named a defendant under the Eleventh Amendment.

Nevertheless, Winkelhake argues that despite her significant role in the Plan, Plaintiffs cannot assert their federal constitutional claims against her because "if there were such a [constitutional] violation, it would arise from the tolls over which the Department and its chief

---

[14] Plaintiffs, of course, maintain that the environmental review violates NEPA and Defendants must publish an EIS or supplemental analysis prior to the Plan moving forward.  Nothing stated herein in response to Winkelhake's Motion, including later mitigation steps should the Plan proceed, should be taken to undermine that view.

engineer have no responsibility." Winkelhake Mot. at 13-14. This limited view is unconvincing. First, NYSDOT owns several of the roadways that will be tolled and could no longer allow the installation and enforcement of tolls on its roadways.[15] Second, the federal constitutional claims require a balancing of the burden imposed on interstate commerce and *local benefits*. *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 95 (2d Cir. 2009);[16] *see also Surprenant v. Mass. Tpk. Auth.*, Civ. A. No. 09-CV-10428-RGS, 2010 WL 785306, at *8 (D. Mass. Mar. 4, 2010) (discussing local benefits related to mitigation, traffic concerns, and pollution in Dormant Commerce Clause analysis). NYSDOT and Winkelhake have played a significant role in determining what local benefits it would provide, and will carry out several mitigation measures as discussed *supra*. As such, Winkelhake continues to have an ongoing role relevant to Plaintiffs' federal constitutional causes of action.

Winkelhake's cited cases regarding Plaintiffs' constitutional claims are inapposite. *See* Winkelhake Mot. at 13-14. In *Collins v. City University of New York*, No. 21 Civ. 9544 (NRB), 2023 WL 1818547, at *5 (S.D.N.Y. Feb. 8, 2023), sovereign immunity only barred claims against five individuals who no longer had any involvement in evaluating religious exemption requests to a school's COVID-19 vaccination requirements, and thus had no authority to grant any of plaintiff's requested relief (*i.e.*, reinstating campus access). However, the court allowed suit against members of the committee who evaluate exemption requests. *Id.*

---

[15] A full list of NYSDOT roadways in New York County is available under NYSDOT's Engineering Division, at https://www.dot.ny.gov/divisions/engineering/technical-services/hds-respository/NYSDOT_2022_LHI_Local_Roads_and_Streets_New_York_County.pdf.

[16] A toll violates the Dormant Commerce Clause if it:  (1) "clearly discriminates against interstate commerce in favor of intrastate commerce," (2) "imposes a burden on interstate commerce incommensurate with the local benefits secured," or (3) "has the practical effect of 'extraterritorial' control of commerce occurring entirely outside the boundaries of the state in question." *Selevan*, 584 F.3d at 90. Similarly, a toll violates the right to travel unless "it (1) is based on some fair approximation of use of the facilities, (2) is not excessive in relation to the benefits conferred, and (3) does not discriminate against interstate commerce." *Id.* at 102 (citation omitted).

Unlike the five individuals who have no role in evaluating religious exemptions or allowing individuals on campus, Winkelhake, acting in her role as Chief Engineer of NYSDOT, is involved in substantial aspects of the Plan's implementation and enforcement as a Sponsor and Representative.  Winkelhake has used and will continue to use her authority to (i) implement the Congestion Pricing Plan (such as working with FHWA to enter into the VPPP); (ii) allow tolls on NYSDOT's roadways; (iii) use the toll money to install electric charging stations (as the lead agency implementing these changes); (iv) plant vegetation to reduce air pollution from the Plan; (v) work with the Project Sponsors on implementing other mitigation measures and monitoring the effects of the Plan, and (vi) implement transportation demand management measures.  *See* AR 29 at ES-22 to ES-23, ES-28, ES-38 to ES-39, ES-42, ES-44 to ES-46; Winkelhake Mot. at 5.

Winkelhake's other cited cases fare no better.  In *Carvel v. Cuomo*, 357 F. App'x 382 (2d Cir. 2009), the pro se plaintiff sued then-Attorney General Cuomo to dissolve a non-profit entity, primarily under state law.  The plaintiff did "not allege[] that the Attorney General himself violated any federal law or that he had any 'personal involvement' in the alleged deprivation of her constitutional rights."  *Id.* at 383 (citation omitted).  Similarly, in *Papazoni v. Shumlin*, No. 5:15-cv-00056, 2015 WL 7281634 (D. Vt. Nov. 17, 2015), *appeal dismissed*, No. 15-4025, 2016 WL 11848846 (2d Cir. Sept. 7, 2016), the pro se plaintiff's suit had already been thrown out twice, and was dismissed a third time based on res judicata, insufficient facts to state a plausible claim, and sovereign immunity for "fail[ing] to articulate any connection between Governor Shumlin and this state proceeding, or any factual allegations specific to Governor Shumlin to suggest that he was personally involved or otherwise responsible for any alleged wrongdoing."  *Id.* 2015 WL 7281634, at *3.

These cases where a pro se plaintiff fails to assert any personal involvement of a state official are far different than the actions and authority of NYSDOT and its Chief Engineer, who worked with Defendants for years on developing and analyzing the Plan, signed the EA and FONSI, and continue to help implement the Plan and its mitigation measures.  It would belie reality to conclude that an official of one of three entities explicitly named as Project Sponsor (and one of four individual Project representatives) who had and continues to have a significant role and authority in the Plan, its implementation, and its mitigation could have no connection to the Plan.

Winkelhake also argues that sovereign immunity bars Plaintiffs' NEPA claims because NEPA (and the APA) only applies to federal agencies.  Winkelhake Mot. at 11-13.  This contention is a distraction, as they admit that NEPA's regulations allow federal agencies to rely on EAs and EISs prepared by state agencies, which is exactly what occurred here.  *Id.* at 4; 42 U.S.C. § 4332(2)(G).  Thus, NEPA contemplates the potential for a state agency to play an active role in the NEPA process.  Notably, none of Winkelhake's cited authority actually discuss sovereign immunity, except for one non-NEPA case cited for the general proposition that "the *Ex parte Young* exception is available only if the law invoked "appl[ies] substantively to the agency." Winkelhake Mot. at 12 (citing *Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 88 (2d Cir. 2001)).[17]

However, numerous courts have determined that sovereign immunity does not bar NEPA claims against state officials to enjoin the agency from continuing with a federally funded project. *See, e.g.*, Daniel R. Mandelker, et al., *NEPA Law & Litig.* § 4:3 (2d ed. 2023-2024) (citing *Joseph v. Adams*, 467 F. Supp. 141, 148 (E.D. Mich. 1978)); *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1397 (9th Cir. 1992) (citation omitted) ("Nonfederal defendants may be enjoined if 'federal

---

[17] *Garcia* cites as an example that the plaintiff, a former executive director of a tribal housing agency, "would not be permitted to pursue injunctive relief if she had sued the AHA under Title VII of the Civil Rights Act, because that law specifically exempts 'an Indian tribe' from its prohibitions."  *Id.*

and state projects are sufficiently interrelated to constitute a single federal action' for NEPA purposes.'"); *Citizens for Smart Growth v. Sec'y of Dep't of Transp.*, 669 F.3d 1203, 1210 (11th Cir. 2012) (jurisdiction over state agency was proper in NEPA case because the agency had substantial role in project, worked in tandem with federal agencies, and plaintiffs only sought injunctive relief).

## **CONCLUSION**

For the foregoing reasons, this Court should deny Winkelhake's Motion to Dismiss.

Dated: New York, New York
        April 15, 2024

                                        **STEPTOE LLP**

                                By:

                                        */s/ Alan M. Klinger*
                                        Alan M. Klinger
                                        Dina Kolker
                                        David Kahne
                                        1114 Avenue of the Americas
                                        New York, New York 10036
                                        (212) 506-3900
                                        aklinger@steptoe.com

                                        *Counsel for Plaintiffs*

13