UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELIZABETH CHAN, TAMARA HOFFMAN, RACHEL EHRENPREIS, CHAIM KATZ, WINNIE CHEUNG, MEIR EHRENPREIS, JOHN BAILEY, SEAN CARNEY, LUIS DIAZ AND FAMILIES FOR A BETTER PLAN FOR CONGESTION,<br><br>       Plaintiffs,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, FEDERAL HIGHWAY ADMINISTRATION, THE METROPOLITAN TRANSPORATION AUTHORITY, THE TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, SHAILEN BHATT, in his official capacity as Administrator of the Federal Highway Administration, RICHARD J. MARQUIS, in his official capacity as Division Administrator of the New York Division of the Federal Highway Administration, STEPHANIE WINKELHAKE, P.E. in her official capacity as Chief Engineer of the New York State Department of Transportation, WILLIAM J. CARRY in his official capacity as Assistant Commissioner for Policy for the New York City Department of Transportation,<br><br>       Defendants. | Case No. 23-cv-10365-LJL<br>[rel. 1:24-cv-01644-LJL]<br>[rel. 1:24-cv-000367-LJL] |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR LEAVE TO AMEND THE FIRST AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii
PRELIMINARY STATEMENT ........................................................................................................ 1
FACTUAL BACKGROUND .............................................................................................................. 4
ARGUMENT ........................................................................................................................................ 7
I.  Plaintiffs Should Be Granted Leave To Amend The Complaint To Add A Claim That The Re-evaluation Is Arbitrary And Capricious ........................................................................ 7
    A.  Adding A Claim Challenging Defendants' Re-evaluation Will Not Result In Undue Delay Or Prejudice ................................................................................................ 8
    B.  Adding A Claim Challenging The Sufficiency Of FHWA's Reevaluation Will Not Be Futile ........................................................................................................................... 9
CONCLUSION .................................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Alicea v. City of New York*,
   No. 1:16-CV-07347 (JLR), 2023 WL 3724131 (S.D.N.Y. May 30, 2023) .............................. 7

*Monahan v. N.Y.C. Dep't of Corr.*,
   214 F.3d (2d Cir. 2000) .................................................................................................... 8

*Piedmont Environmental Council v. U.S. Department of Transportation*,
   159 F. Supp. 2d (W.D. Va. 2001) ................................................................................... 11

*Price Road Neighborhood Ass'n v. U.S. Department of Transportation*,
   113 F.3d (9th Cir. 1997) ................................................................................................. 11

*Rachman Bag Co. v. Liberty Mut. Ins. Co.*,
   46 F.3d (2d Cir. 1995) ...................................................................................................... 8

*Riccuiti v. N.Y.C. Transit Auth.*,
   941 F.2d (2d Cir. 1991) .................................................................................................... 9

*Schaghticoke Tribal Nation v. Norton*, 3:06cv81 (PCD),
   2007 WL 867987 (D. Conn. Mar. 19, 2007) .................................................................. 10

*Williams v. Citigroup Inc.*,
   659 F.3d 208, 212-13 (2d Cir. 2011) ................................................................................ 7

**Statutes**

NEPA ...................................................................................................................... passim

**Other Authorities**

23 C.F.R. § 771.129 ...................................................................................................... 6

40 CFR § 1502.9(d)(1) .................................................................................................. 6

Fed. R. Civ. P. 15(a)(2) ................................................................................................. 7

Plaintiffs submit this Memorandum of Law in support of their Motion for Leave to Amend the First Amended Complaint to include additional facts supporting Count Two (failure to supplement) and to assert an additional claim that the re-evaluation conducted by the Federal Highway Administration ("FHWA") is arbitrary and capricious under the National Environmental Policy Act ("NEPA").[1]

## PRELIMINARY STATEMENT

On June 14, 2024, at the urging of the MTA, the FHWA issued its "re-evaluation" of the Central Business District Tolling Program ("Congestion Pricing"). Less than 10 days earlier, on June 5, 2024, New York Governor Kathy Hochul had announced an "indefinite pause" on Congestion Pricing, citing changed circumstances in New York since the program was conceived in 2019 and the significant unintended consequences of the program, particularly to working and middle-class New Yorkers. The Governor pledged to find additional sources of funding to support mass transit outside Congestion Pricing that would obviate the need to impose significant tolls on passenger and other vehicles entering Manhattan. Yet, while much still remained (and remains) in flux, the MTA requested that the FHWA issue its re-evaluation, comparing the environmental impacts of the adopted Congestion Pricing tolling structure – arrived at months earlier – with the scheme evaluated in the EA. Unsurprisingly, in a 175-page analysis that omitted any consideration of the pause, the "re-evaluation" concluded that the adopted toll structure was within the scope of the analysis conducted in the EA, that no further analysis was warranted, and that the "Finding of No Significant Impact" ("FONSI") remained valid.

---

[1] Counsel for Plaintiffs contacted Defendants' counsel on July 12, 2024 regarding the proposed amendment in accordance with the parties' June 27 joint letter (Dkt. No. 95) and described the amended pleading as addressing the FHWA re-evaluation as well as its impact on the supplementation claim. Defendants' counsel indicated that Defendants might stipulate to the amendment and move on to conferring on a renewed summary judgment briefing schedule but would need time to review the amendment before making any decision.

Among other changes in the adopted toll, two additional hours were added to peak pricing, a three-level timing structure (peak, non-peak and overnight) was changed to two levels (peak and overnight), the price of the overnight toll was lowered below the entire range of off-peak and overnight tolls, and the toll for taxis and FHV was not capped as a once-per-day driver-incurred toll, but instead adopted as an incremental charge passed on to the taxi or FHV passenger of $1.25 and $2.50 per ride (which will arguably have no impact on congestion at all).  On this last change, the re-evaluation emphasizes that under the new construct, taxis and FHV will only see a net decrease of -.3% in vehicle miles traveled ("VMT") throughout the Central Business District ("CBD") and therefore should not experience a decrease in business, but ignores the larger implication of only decreasing taxi and FHV congestion in the City by this miniscule percentage. In ways that will impact behavior, drive traffic patterns and increase pollution, the adopted tolling structure deviates substantially from the one reviewed in the EA.

That these changes will have a significant impact on congestion and the environment are not based on "rank speculation by Plaintiffs' counsel" as Defendants suggested at oral argument before the Court back in April.  They are supported by Defendants' own documents:  the Traffic Mobility Review Board ("TMRB") recommendation, for example, estimates that taxis and FHV "carry[] more than one million passengers a day pre-pandemic," are a "significant cause of congestion" in the City, and comprise "more than half of all vehicles in the CBD."[2]  The TMRB recommendation, too, estimates that the increased peak hours in the adopted structure would impact some 60,000 cars entering the CBD *per day* during those hours.[3]

---

[2] "Congestion Pricing in New York:  A toll structure recommendation from the Traffic Mobility Review Board," November 2023, at p. 23 (Dkt. 54-4)

[3] *Id.* at p. 19.

The Court's June 20, 2024 Opinion and Order approved of Defendants' multi-step environmental review, at least in part, because the EA and FONSI would be followed by a "more granular assessment of whether specific aspects of a project fit within the prior analysis or require additional study." (Dkt. No. 86, at 68). The FHWA's released "re-evaluation" – the only environmental assessment of the actual tolling structure adopted—fails to provide the requisite "granular assessment." With the die already cast, FHWA's analysis amounts to a re-running of the New York Best Practice Model ("BPM") and does so outside of public view, sidestepping any public scrutiny or challenge. The re-run BPM data on the actual toll predicts even more pollutants to areas such as Richmond County and Bergen County and still forecasts increased traffic to the Lower East Side along the FDR Drive (predominantly south of 10th Street), a primarily residential and environmental justice community that would be significantly burdened both economically and environmentally by Congestion Pricing. The re-evaluation does not adequately consider core NEPA issues, including mitigation and the failure to seriously consider viable alternatives (alternatives which may be significantly more viable given the Governor's public intention to identify for additional funding sources). The purpose of a re-evaluation or supplementation during the NEPA process is to refresh an environmental assessment for a federal program when changed circumstances warrant it. The change to the tolling structure in March required a full supplemental EA. The less rigorous re-evaluation process: (1) inadequately analyzed the impact of the changes, itself violative of NEPA; (2) failed to cure the NEPA violation in not engaging in a full supplementation, one that would have allowed for public participation and analysis; and (3) insufficiently accounted for the changed circumstances surrounding Congestion Pricing that are still unfolding.[4]

---

[4] The re-evaluation did not acknowledge the Governor's "indefinite pause." Rather than wait for a final Congestion Pricing scheme that may be implemented, or await details on potential assistance that may emerge from Governor

Shortly after the FHWA issued its re-evaluation, the Court requested that the parties confer and propose a schedule for supplemental briefing on how the re-evaluation affects the pending motions. In its Opinion and Order, the Court deferred ruling on the failure to supplement claim and on the merits of the re-evaluation. (Dkt. No. 86, at 70). Plaintiffs seek to amend to update Count Two based on the continued failure to supplement the EA, a claim that is now indisputably ripe, and to detail the insufficiency of the FHWA "re-evaluation" in a new cause of action. Adding these new facts and the additional re-evaluation claim has been contemplated by both the parties and the Court since summary judgment briefing and therefore will not prejudice Defendants; nor has there been any undue delay in seeking this amendment. As outlined in the parties' joint June 27, 2024 letter to the Court, new supplemental briefing should occur on the proposed Second Amended Complaint which will account for the recent re-evaluation and changed circumstances of the "pause." The Proposed Second Amended Complaint is annexed to the Declaration of Alan Klinger as Exhibit A.

## FACTUAL BACKGROUND[5]

In May 2023, Defendants published the EA, which evaluated the environmental effects of the congestion pricing program through seven hypothetical tolling scenarios. AR 29 at 2-31. In June 2023, Defendants published the FONSI, concluding that the none of the seven studied scenarios would have a "significant impact on the human or natural environment." AR 361 at DOT_363. On November 30, 2023, the TMRB released its recommended toll price and structure for the congestion pricing program ("TMRB Recommendation"). ECF No. 54-4. Notably, the recommended toll price and structure did not match any of the scenarios analyzed in the EA or

---

Hochul's efforts to find alternative sources of funding for the MTA, the FHWA re-evaluated the adopted tolling program, rendering it, like the EA effectively an analysis of a hypothetical program.

[5] The factual background for the Congestion Pricing program, is more fully laid out in the parties' summary judgment briefings. *See* ECF Nos. 54, 65, 68, 78, 81-82.

4

FONSI, and had several considerable changes from any of the analyzed tolls. *Id.* The MTA and TBTA adopted the TMRB Recommendation on December 6, 2023. ECF No. 49 ¶ 138. On March 27, 2024, the MTA voted 11-1 to approve the TMRB Recommendation at its monthly board meeting, with few changes. MTA, MTA Board Meeting on March 27, 2024 Minutes, in MTA Board Action Items, at 14-15 (Mar. 27, 2024).[6]

The adopted toll structure has many key differences as compared with the scenarios studied in the EA and FONSI. Among them, the "peak" daytime toll rate applies for an extra two hours each day compared to the scenarios – from 5:00 AM to 9:00 PM on weekdays and 9:00 AM to 9:00 PM on weekends – capturing many more drivers and causing further diversion of traffic to surrounding areas.[7] FAC ¶ 116; TMRB Recommendation at 8. This amounts to some 520 additional hours of tolling per year, affecting approximately 60,000 vehicles entering the CBD each weekday. TMRB Recommendation at 19. In total, the change will affect 15.6 million cars in a given year,[8] not including the 104 hours of added peak tolls on weekends. Second, the adopted tolling structure applied a $15 toll for passenger vehicles and passenger-type vehicles, even though none of the scenarios analyzed that toll price. TMRB Recommendation at 8. Third, the tolling structure provided a $5 crossing credit for those entering the CBD through the Lincoln and Holland Tunnels, and a $2.50 crossing credit if entering or exiting the CBD through the Queens-Midtown and Hugh L. Carey Tunnel. MTA, MTA Board Meeting on March 27, 2024 Minutes, in MTA Board Action Items, at 14 (Mar. 29, 2023).[9] Fourth, the adopted tolling structure charges for-hire-vehicles (*e.g.*, taxis and Ubers) per ride,[10] even though the EA never contemplated a per-ride toll.

---

[6] *Id.,* https://new.mta.info/document/135591.

[7] All other hours *are* considered "off-peak" and are priced 75% lower than the peak toll.

[8] This figure is based on multiplying 60,000 vehicles by 260 weekdays in a year.

[9] *MTA Bd. Meeting*, *supra* note 6.

[10] Taxis will be charged $1.25 per ride, while Ubers will be charged $2.50 per ride. *Id.* at 14-15.

5

*Id.* The amount, times, locations of the toll pricing, and structure doubtless would impact the volume, location of traffic and environmental impact of Congestion Pricing. FAC ¶ 7; EA at ES-13. Yet none of these scenarios were analyzed.

Pursuant to federal regulations, and as contemplated in the initial review, FHWA was required to conduct a re-evaluation to determine whether their existing FONSI remained valid in light of the changes in the program. 23 C.F.R. § 771.129. If Defendants concluded in the re-evaluation that the adopted toll structure reflected "substantial changes to the proposed action that are relevant to environmental concerns," they would be required to conduct and publish a supplemental analysis. 40 C.F.R. § 1502.9(d)(i).

In late April 2024, prior to Defendants' re-evaluation, the MTA announced that Congestion Pricing would begin on June 30, 2024, following the completion of the re-evaluation and execution of an agreement authorizing tolling under the Value Pricing Pilot Program ("VPPP"). ECF No. 85. However, on June 5, 2024, the Governor issued a statement indefinitely halting the implementation of Congestion Pricing, explaining that "circumstances have changed" for a program that "was enacted in a pre-pandemic period where workers were in the office five days a week…." The Governor stated that implementing Congestion Pricing "risks too many unintended consequences," particularly to working and middle-class New Yorkers.[11] The Governor stopped short of canceling the program altogether, but suggested in subsequent remarks that "to assume that the only funding source [for improvements to mass transit] has to be congestion pricing shows a lack of imagination" and that there are "other ways to deal with this."[12] As has been widely

---

[11] *Video, Audio & Rush Transcript: Governor Hochul Addresses New Yorkers on Affordability and the Cost of Living,* NYS (June 5, 2024), https://www.governor.ny.gov/news/video-audio-rush-transcript-governor-hochul-addresses-new-yorkers-affordability-and-cost.

[12] *Hochul Still 'Committed' to MTA Improvements Despite Congestion Pricing Pause*, ABC7 NY (June 10, 2024), https://abc7ny.com/post/congestion-pricing-pause-hochul-committed-mta-improvements/14932184/.

reported, in the days after the Governor's initial statement the Legislature and the Governor began looking for alternatives that would raise revenue for the MTA (alternatives, we have argued, that should have been explored *prior* to enacting a sizeable toll on everyday New Yorkers). According to most press reports, while the legislative session has concluded, the process to identify additional sources of revenue for the MTA and other strategies for reducing congestion (without imposing a regressive tax) remains ongoing.

The following week, at the behest of the MTA, on June 14, 2024, the FHWA released its re-evaluation, concluding that the FONSI remained valid, despite the substantial changes between the hypothetical scenarios and the actual tolling structure. Shortly thereafter, on June 27, the MTA Board affirmed the Governor's pause, extending the implementation date indefinitely from June 2024 until such time as the Project Sponsors execute the VPPP. Plaintiffs now move to amend the First Amended Complaint to update the existing failure to supplement cause of action and add a claim challenging this re-evaluation.

## ARGUMENT

### I. Plaintiffs Should Be Granted Leave To Amend The Complaint To Add A Claim That The Re-evaluation Is Arbitrary And Capricious

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, a party may amend its complaint with "the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Alicea v. City of New York*, No. 1:16-CV-07347 (JLR), 2023 WL 3724131, at *2 (S.D.N.Y. May 30, 2023).

As the Second Circuit has explained, "this permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (cleaned up). Accordingly, "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's

7

mandate must be obeyed." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (citation omitted); *see Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234 (2d Cir. 1995) ("The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.'" (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

### A. Adding A Claim Challenging Defendants' Re-evaluation Will Not Result In Undue Delay Or Prejudice

There is no evidence or indication that adding this claim would result in undue delay or prejudice, or that Plaintiffs assert this claim in bad faith or with a dilatory motive. Plaintiffs have argued since the outset of this case that Defendants have fast-tracked the environmental review and almost certainly would conduct a re-evaluation behind closed doors outside public scrutiny to conclude that a supplemental analysis is not necessary, despite the substantial changes in the scenarios studied in the EA and FONSI compared to the adopted toll structure.

Defendants will not be prejudiced by a challenge to the results of FHWA's reevaluation. Indeed, during oral argument, Defendants plainly stated that they are anticipating this challenge, and acknowledged Plaintiffs' ability to raise a specific claim challenging FHWA's reevaluation as soon as the process is completed:

> At the reevaluation phase, what the agency is looking at is whether the final tolling structure has impacts that are different or more significant than the impacts that were identified by looking at the tolling scenarios in the EA. **So to the extent the plaintiffs want to make an argument that the [they can] – once that determination is completed**.

Oral Argument Tr. 144:13-18 (emphasis added).

In discussing the FHWA's forthcoming reevaluation, this Court also acknowledged the possibility of Plaintiffs' separate challenge to FHWA's completed reevaluation:

> THE COURT: As I understand it from the New Jersey

8

> case, one reason for that, by its announcement on the MTA
> website, there's an assurance it will get wide publicity. I
> assume your clients are going to be monitoring the MTA website
> and **are not going to hesitate to bring that claim in front of
> me if there's a claim there, correct?**
> MR. KLINGER: **That is correct**.

Oral Argument Tr. 12:4-10 (emphasis added).

Therefore, there has been no delay or prejudice to Defendants and the challenge to the re-evaluation is one that was entirely expected. Indeed, in its Opinion and Order, the Court contemplated supplemental briefing from the parties regarding the re-evaluation. (Dkt. No. 86, at 70). Plaintiffs should be permitted to amend the Amended Complaint to add this claim.

### B.   Adding A Claim Challenging The Sufficiency Of FHWA's Reevaluation Will Not Be Futile

Amending the Amended Complaint to add a claim challenging the sufficiency of FHWA's reevaluation will not be futile. The Second Circuit has explained that a court should not deny leave to file a proposed amendment unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Riccuiti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (citation omitted). A proposed amendment must simply be plausible and the court should not evaluate the underlying merits of a claim unless the amendment is "clearly frivolous or legally insufficient on its face." *Schaghticoke Tribal Nation v. Norton*, 3:06cv81 (PCD), 2007 WL 867987, at *11 (D. Conn. Mar. 19, 2007) (citation omitted).

The NEPA re-evaluation claim is plainly plausible on its face. In fact, during oral argument, Defendants themselves recognized legal authority supporting a separate claim challenging the FHWA's completed re-evaluation:

> The Federal Highway Administration is currently in the process of
> conducting a reevaluation to determine the very thing that the
> plaintiffs are asking your Honor to determine here today.
> Contrary to plaintiffs' assertion, there's nothing
> internally inconsistent about these two positions. These are

9

> two distinct NEPA claims, one challenging a NEPA document, the second seeking to compel the creation of a different NEPA document.
>
> We cited to those cases in our briefs, the *South Carolina Wildlife Federation* from the District of South Carolina from 2007 sets this out explicitly; *Native Songbird* from the Northern District of California; *Montlake Community Club* from the Western District of Washington, as well as the Fourth Circuit in *Jersey Heights Neighborhood Association*. In those cases, the challenge to an initial —— to the EA or the EIS in the initial NEPA analysis was found to be untimely, but **a subsequent motion challenge to the reevaluation process was allowed to proceed**.

Oral Argument Tr. 138:9-139:4 (emphasis added).

Plaintiffs have alleged that Defendants' use of a re-evaluation as the sole environmental review of the actual tolling structure was improper and that the actual re-evaluation analysis of the changes to the scheme was insufficient and did not properly account for changed circumstances. This claim reviewing the sufficiency of the re-evaluation stands apart from Plaintiffs' first cause of action alleging an inadequate EA and FONSI and second cause of action alleging a failure to supplement the NEPA documents in light of new information.

Separate claims challenging FHWA's reevaluation of NEPA review documents, in addition to claims challenging the adequacy of the EA or EIS, are regularly litigated. In *Price Road Neighborhood Ass'n v. U.S. Department of Transportation*, 113 F.3d 1505, 1507 (9th Cir. 1997), FHWA issued a FONSI after reviewing an EA prepared by the Arizona Department of Transportation (ADOT) in connection with a partial redesign of a freeway interchange. FHWA later required ADOT "to conduct an environmental reevaluation . . . to determine the continuing validity of the EA/FONSI." *Id.* In addition to asserting a claim challenging defendants' failure to issue a supplemental EA, *Price Road Neighborhood Ass'n* plaintiffs independently challenged the adequacy of the defendants' re-evaluation, arguing that the agencies' determination that the

10

proposed redesign produced "no discernible differences" was arbitrary and capricious. *Id.* at 1508, 1510, 1511 n.8.

Further, in *Piedmont Environmental Council v. U.S. Department of Transportation*, 159 F. Supp. 2d 260, 267 (W.D. Va. 2001), the plaintiffs alleged several claims under NEPA in connection with the proposed construction of a bypass around the City of Charlottesville. In addition to challenging deficiencies in the EIS, such as insufficient discussion of alternatives and the failure to consider the cumulative impact of the project, as well as a claim that the agency failed to supplement the EIA after substantial changes to the project, the plaintiffs also pleaded a separate count addressing "Reevaluation as a 'Post Hoc Rationalization.'" *Id*. at 287. This claim alleged that FHWA violated NEPA in its decision to issue a re-evaluation instead of a new or supplemental EIS. *Id*.

Permitting amendment of the First Amended Complaint will allow the parties to update the summary judgment briefing to account for the re-evaluation and completion of the NEPA process. The thrust of Defendants' summary judgment motions on Count Two regarding the failure to supplement was that the claim was not yet ripe, as the FHWA had not yet determined whether to supplement the EA. With the re-evaluation now issued and the FHWA concluding that no further NEPA environmental review is warranted, Plaintiffs should be permitted to amend the complaint and briefing should focus both on the undecided failure to supplement claim and the re-evaluation itself. The numerous deficiencies contained within FHWA's simple re-run of the BPM data and confirmation of its FONSI provide Plaintiffs with a substantial basis to assert an additional claim challenging the re-evaluation.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court grant Plaintiffs' motion to amend the complaint.

11

Dated: New York, New York　　　　　　**STEPTOE LLP**
　　　　July 26, 2024

　　　　　　　　　　　　　　　　By:
　　　　　　　　　　　　　　　　　　 */s/ Alan M. Klinger*
　　　　　　　　　　　　　　　　　　Alan M. Klinger
　　　　　　　　　　　　　　　　　　Dina Kolker
　　　　　　　　　　　　　　　　　　David Kahne
　　　　　　　　　　　　　　　　　　1114 Avenue of the Americas
　　　　　　　　　　　　　　　　　　New York, New York 10036
　　　　　　　　　　　　　　　　　　(212) 506-3900
　　　　　　　　　　　　　　　　　　aklinger@steptoe.com

　　　　　　　　　　　　　　　　　　*Counsel for Plaintiffs*

12