UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x

ELIZABETH CHAN, *et al.*,

      Plaintiffs,

       v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION, *et al.*,

      Defendants.

----------------------------------------------------------------- x

MICHAEL MULGREW, *et al.*,

      Plaintiffs,

       v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION, *et al.*,

      Defendants.

----------------------------------------------------------------- x

No. 1:23-cv-10365-LJL

No. 1:24-cv-01644-LJL


# MEMORANDUM OF LAW OF DEFENDANT STEPHANIE WINKELHAKE, P.E., IN SUPPORT OF HER MOTION TO <u>DISMISS THE FEDERAL CONSTITUTIONAL CLAIMS</u>

LETITIA JAMES
Attorney General of the State of New York
New York State Attorney General's Office
28 Liberty Street
New York, New York 10005
Telephone:  (212) 416-8271

ANDREW G. FRANK
Assistant Attorney General
   *Of Counsel*

September 30, 2024

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................ii

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND ................................................................................................... 2

    A.    New York State's Congestion Pricing Statute ...................................... 2

    B.    The *Chan* and *Mulgrew* Cases .............................................................. 3

STANDARD OF REVIEW ................................................................................... 4

ARGUMENT ......................................................................................................... 5

I.    THE ACT DOES NOT VIOLATE THE DORMANT
    COMMERCE CLAUSE................................................................................... 5

    A.    The Act Does Not Discriminate Against or Unduly Burden
    Interstate Commerce.............................................................................. 7

    B.    The Act Does Not Impose User Fees and Even If It Did, It
    Would Satisfy the *Evansville* Test ....................................................... 9

        1.    The Act does not impose a user fee ............................................... 9

        2.    Even if congestion tolls were construed as user fees, the
        Act satisfies the *Evansville* test ................................................. 10

II.    THE ACT DOES NOT VIOLATE THE RIGHT TO TRAVEL ...................... 15

CONCLUSION.................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### FEDERAL DECISIONS

*Abadi v. American Airlines, Inc.*,
   No. 23-cv-4033 (LJL), 2024 WL 1346437 (S.D.N.Y. Mar. 29, 2024) ............. 17

*Am. Trucking Ass'ns v. Mich. Publ. Serv. Comm'n*,
   545 U.S. 429 (2005) ............................................................................................ 7

*Angus Partners LLC v. Walder*,
   52 F. Supp. 3d 546 (S.D.N.Y. 2014) ........................................ 12, 13, 14, 15, 16

*Attorney Gen. of N.Y. v. Soto-Lopez*,
   476 U.S. 898 (1986) .......................................................................................... 16

*Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*,
   887 F.2d 417 (2d Cir. 1989) .............................................................................. 14

*Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*,
   567 F.3d 79 (2d Cir. 2009) .................................................................... 11, 12, 13

*Brown & Williamson Tobacco Corp. v. Pataki*,
   320 F.3d 200 (2d Cir. 2003) ................................................................................ 7

*Commonwealth Edison Co. v. Montana*,
   453 U.S. 609 (1981) ............................................................................................ 9

*Cramer v. Skinner*,
   931 F.2d 1020 (5th Cir. 1991) .......................................................................... 17

*Evansville-Vanderburgh Airport Authority v. Delta Airlines, Inc.*,
   405 U.S. 707 (1972) ................................................................................. 6, 9, 10

*Exxon Corp. v. Governor of Md.*,
   437 U.S. 117 (1978) ............................................................................................ 7

*Gilmore v. Gonzales*,
   435 F.3d 1125 (9th Cir. 2006) .......................................................................... 17

Pages

*Janes v. Triborough Bridge & Tunnel Auth.*,
    977 F. Supp. 2d 320 (S.D.N.Y. 2013),
    *aff'd*, 774 F. 3d 1052 (2d Cir. 2014) ............................................................... 16

*Janes v. Triborough Bridge & Tunnel Auth.*,
    774 F. 3d 1052 (2d Cir. 2014) ................................................................... 13, 16

*Mid-Atlantic Bldg. Sys. Council v. Frankel*,
    17 F.3d 50 (2d Cir. 1994) ................................................................................ 5

*Molinari v. N.Y. Triborough Bridge & Tunnel Auth.*,
    838 F. Supp. 718 (E.D.N.Y. 1993)................................................................. 14

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*,
    272 F.3d 104 (2d Cir. 2001) ........................................................................... 8

*Nat'l Pork Producers Council v. Ross*,
    598 U.S. 356 (2023) .................................................................................... 6, 8

*Northeast Bancorp, Inc. v. Board of Governors of the Fed. Reserve Sys.*,
    472 U.S. 159 (1985) ....................................................................................... 5

*Northwest Airlines, Inc. v. County of Kent, Mich.*,
    510 U.S. 355 (1994) ..................................................................................... 11

*Owner Operator Independent Drivers Ass'n v. Pennsylvania
Turnpike Comm'n*,
    934 F.3d 283 (3d Cir. 2019) ......................................................................... 16

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970) ....................................................................................... 6

*Pollack v. Duff*,
    793 F.3d 34 (D.C. Cir. 2015) ....................................................................... 16

*Selevan v. New York Thruway Authority*,
    584 F.3d 82 (2d Cir. 2009) ..................................................................... 11, 12

*South Dakota v. Wayfair, Inc.*,
    585 U.S. 162 (2018) ....................................................................................... 5

Pages

Torraco v. Port Auth. of N.Y. & N.J.,
　　615 F.3d 129 (2d Cir. 2010) ............................................................. 17

Town of Southold v. Town of E. Hampton,
　　477 F.3d 38 (2d Cir. 2007) ......................................................... 16, 17

United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.,
　　550 U.S. 330 (2007) ............................................................................ 8

VIZIO, Inc. v. Klee,
　　886 F.3d 249 (2d Cir. 2018) ....................................................... 4, 8, 9

Western & S. Life Ins. Co. v. State Bd. of Equalization of Cal.,
　　451 U.S. 648 (1981) ............................................................................ 5

White v. Mass. Council of Constr. Employers., Inc.,
　　460 U.S. 204 (1983) ............................................................................ 5

**FEDERAL STATUTES**

Value Pricing Pilot Program
　　23 U.S.C. § 149 note ......................................................................... 5

**STATE STATUTES**

N.Y, Pub. Auth. L.
　　§ 1264 ............................................................................................. 10

N.Y. Vehicle & Traffic L.
　　§§ 1701 – 1706 .............................................................................. 2, 7
　　§ 1701 ................................................................................... 2, 12, 14
　　§ 1704(2) ..................................................................................... 2, 10
　　§ 1704-a ............................................................................................ 2
　　§ 1704-a(1) ................................................................................ 10, 15
　　§ 1705 ............................................................................................... 2

## PRELIMINARY STATEMENT

The *Chan* and *Mulgrew* plaintiffs claim that congestion pricing violates the "dormant" Commerce Clause and the federal right to travel. Defendant Stephanie Winkelhake seeks to dismiss those causes of action because they fail to state challenges to the constitutionality of New York's Traffic Mobility Act ("Act"), which authorizes congestion pricing.[1]

First, congestion pricing will proceed only after authorization by the Federal Highway Administration pursuant to federal law, and action within the scope of a Congressional authorization does not violate the dormant Commerce Clause. But even if the dormant Commerce Clause applies, the *Chan* and *Mulgrew* plaintiffs' allegations must, if true, establish that the Act (i) discriminates against interstate commerce, (ii) imposes a burden on interstate commerce that is different from the burden it imposes on intrastate commerce, or (ii) imposes an extraterritorial regulation. The plaintiffs' complaints fail to allege a dormant Commerce Clause violation under any of these theories. The complaints also claim that congestion tolling violates the commerce clause based on a test for assessing the constitutionality of user fees designed to defray the costs of state-provided facilities—like bridges and tunnels—but congestion pricing was not designed to defray the costs of maintaining the Central Business District and is therefore not a

---

[1] Defendant Triborough Bridge and Tunnel Authority ("Triborough") and Metropolitan Transportation Authority ("MTA") established the tolling rate schedule; accordingly, they address the constitutionality of that toll schedule in their motion to dismiss. Ms. Winkelhake supports dismissal of the as-applied federal constitutional challenges for the reasons stated in MTA/Triborough's brief.

user fee subject to review under that test. And even if congestion tolls were considered user fees, the statute would easily pass constitutional muster under the applicable standard. The *Chan* and *Mulgrew* plaintiffs' right to travel claim is substantively duplicative of their dormant Commerce Clause claim and fails for the same reasons.

## BACKGROUND

### A.    New York State's Congestion Pricing Statute

In 2019, the New York State legislature enacted the Act. N.Y. Vehicle & Traffic L. §§ 1701-1706. One goal of the Act was to reduce traffic congestion and air pollution in an area designated as the central business district, which by statute includes all roads in Manhattan south of 60th Street with a few exceptions. *Id*. §§ 1701, 1704(2). A second goal was to create a dedicated funding source for the capital needs of the MTA subway, bus and commuter rail operations. *Id*. § 1701. To achieve these ends, the Act directed Triborough to set and collect tolls for vehicles entering or remaining in the central business district. *Id*. §§ 1704-a, 1705. Those tolls will be used to pay the operating costs of the congestion pricing program and fund capital projects undertaken by the MTA. *Id*. § 1704-a.

In March 2024, Triborough adopted a toll rate schedule to implement the Act. MTA, MTA Board Adopts Central Business District Toll Rates (Mar. 27, 2024).[2] In April 2020, MTA announced that the tolling would begin on June 30, 2024. MTA,

---

[2] http://new.mta.info/press-release/mta-board-adopts-central-business-district-toll-rates.

MTA to Launch First-In Nation Effort to Deliver Cleaner Air, Less Traffic and Better Transit for the New York Metropolitan Area (Apr. 26, 2024).[3]

On June 5, 2024, Governor Kathy Hochul paused implementation of congestion pricing under the Act [*Chan* ECF No. 91].  On June 26, 2024, Triborough extended the implementation date to such time as the New York State Department of Transportation, Triborough, the New York City Department of Transportation, and the Federal Highway Administration execute an agreement authorizing implementation of congestion pricing pursuant to the federal Value Pricing Pilot Program. [*Chan* ECF No. 102-1].

## B.    The *Chan* and *Mulgrew* Cases

Before the Court is the *Chan* plaintiffs' second amended complaint ("*Chan* Complaint") [*Chan* ECF No. 106-2]  and the *Mulgrew* plaintiffs' second amended complaint ("*Mulgrew* Complaint") [*Mulgrew* ECF No. 93-2].[4]  The two complaints are in many respects similar.  Each names four federal defendants:  the United States Department of Transportation, the Federal Highway Administration, and two Highway Administration officers in their official capacities.  The two complaints also name the following as defendants:  the MTA, Triborough, Ms. Winkelhake, and either the assistant commissioner of policy for the New York City Department of

---

[3] https://new.mta.info/press-release/mta-launch-first-nation-effort-deliver-cleaner-air-less-traffic-and-better-transit.
[4] While the Court has authorized the filing of the two second amended complaints [*Chan* ECF No. 113; *Mulgrew* ECF No. 100], the *Chan* and *Mulgrew* plaintiffs have not yet filed them, so references here are to the versions fil with the motions to amend.

Transportation (*Chan*) or the New York City Department of Transportation itself (*Mulgrew*).

The *Chan* Complaint and *Mulgrew* Complaint each includes six causes of action, two of which are relevant to this motion.  Specifically, the fourth cause of action asserts that the congestion tolling violates the dormant Commerce Clause of the United States Constitution (*Chan* Complaint ¶¶ 321-239; *Mulgrew* Complaint ¶¶ 214-221) and the fifth cause of action alleges that the tolling violates the right to travel under the United States Constitution (*Chan* Complaint ¶¶ 240-247; *Mulgrew* Complaint ¶¶ 222-228).[5]

## STANDARD OF REVIEW

On a motion to dismiss, federal courts regard all well-pleaded factual allegations in the complaint as true, draw all reasonable inferences in the plaintiff's favor, and assess whether the allegations plausibly give rise to an entitlement to relief.  *VIZIO, Inc. v. Klee*, 886 F.3d 249, 255 (2d Cir. 2018).  The *Chan* and *Mulgrew* plaintiffs have the burden, however, of alleging facts establishing that the Act "imposes an impermissible burden on interstate commerce."  *Id.*

---

[5] The first, second, third and sixth causes of action in the two complaints are not at issue in this motion.  *See, e.g.*, Opinion and Order (June 20, 2024) at 40 (ruling that the *Mulgrew* first cause of action regarding compliance with the National Environmental Policy Act was untimely) [*Chan* ECF No. 99]; id. at 112 (dismissing the *Chan* first cause of action regarding compliance with the National Environmental Policy Act on summary judgment); So-Ordered Letter Schedule (Sept. 16, 2024) (setting separate schedule for motion practice on second and third causes of action under NEPA) [*Chan* ECF No. 112]; Opinion and Order at 29 (dismissing the sixth cause of action under the Green Amendment to the New York State Constitution as against Ms. Winkelhake in *Chan* and as against the New York State Department of Transportation in *Mulgrew*).

**ARGUMENT**

The Act does not violate the dormant Commerce Clause or the right to travel because it neither discriminates against nor imposes an unequal burden on interstate commerce.  As a result, this Court should dismiss the *Chan* and *Mulgrew* plaintiffs' claims challenging the constitutionality of the Act.

## I.    THE ACT DOES NOT VIOLATE THE DORMANT COMMERCE CLAUSE

As an initial matter, congestion pricing cannot violate the dormant Commerce Clause because congestion pricing may proceed only if the New York State and New York City Departments of Transportation and Triborough enter into a cooperative agreement with the Federal Highway Administration pursuant to the Value Pricing Pilot Program established by Congress.  *See* 23 U.S.C. § 149 note. The dormant Commerce Clause operates only where Congress's commerce powers are in fact dormant and have not been "exercised by that body."  *Northeast Bancorp, Inc. v. Board of Governors of the Fed. Reserve Sys.*, 472 U.S. 159, 174 (1985). "[W]hen Congress exercises its power to regulate commerce by enacting legislation, the legislation controls."  *South Dakota v. Wayfair, Inc.*, 585 U.S.162, 171 (2018). And "any action taken by a State within the scope of the congressional authorization is rendered invulnerable to Commerce Clause challenge."  *Western & S. Life Ins. Co. v. State Bd. of Equalization of Cal.*, 451 U.S. 648, 653 (1981); *see White v. Mass. Council of Constr. Employers, Inc.*, 460 U.S. 204, 213 (1983); *Mid-Atlantic Bldg. Sys. Council v. Frankel*, 17 F.3d 50, 52 (2d Cir. 1994).

But even if the Act is subject to scrutiny under the dormant Commerce Clause, it survives such scrutiny. The dormant Commerce Clause prohibits a state law that "discriminates [against interstate commerce] on its face." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 377 (2023). The clause also prohibits a state law whose burdens or "practical effects may also disclose the presence of a discriminatory purpose." *Id.*; *see also Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) (discussing burdens on interstate commerce). In some specific instances, the clause also prohibits a state regulation with an impermissibly extraterritorial effect. *Nat'l Pork Producers*, 598 U.S. at 374 (discussing the Court's invalidation of statutes that "deliberately prevent[ed out-of-state firms] from undertaking competitive pricing or deprive[d] businesses and consumers in other States of 'whatever competitive advantages they may possess'" (internal quotation marks and citations omitted)).

To evaluate the constitutionality of user fees or tolls under the dormant Commerce Clause, courts look to whether the fee is a fair approximation of the use of the facilities or excessive in relation to the benefit received. *See Evansville-Vanderburgh Airport Authority v. Delta Airlines, Inc.,* 405 U.S. 707, 714, 716-717 (1972).

The *Chan* and *Mulgrew* plaintiffs fail to state a dormant Commerce Clause claim on any of these theories.

A.    **The Act Does Not Discriminate Against or Unduly Burden Interstate Commerce.**

The *Chan* and *Mulgrew* plaintiffs allege that failure to provide discounts to New Jersey residents or users of the George Washington Bridge constitutes facial discrimination against interstate commerce. *Chan* Complaint ¶ 236; *Mulgrew* Complaint ¶ 219. However, the Act itself does not address those discounts or authorize any differential treatment of interstate and intrastate users. *See* N.Y. Vehicle & Traffic L. § 1701-1706. In any event, while under Triborough's toll structure no crossing credits are provided to New Jersey residents generally or to those using the George Washington Bridge to enter Manhattan from the west, no such credits are provided to New Yorkers generally or those using the Triborough or Henry Hudson Bridges to enter Manhattan from the east or north. MTA, Congestion Relief Zone Toll Information.[6] And New Jersey residents using the Lincoln and Holland Tunnels will receive the same credits as anyone else using those facilities. *Id.*

In other words, the Act does not facially discriminate against or unduly burden interstate commerce because it treats intrastate and interstate commerce alike. *See, e.g.*, *Am. Trucking Ass'ns v. Mich. Publ. Serv. Comm'n*, 545 U.S. 429, 434 (2005) (no facial discrimination when statute imposed annual fee on every truck engaged in intrastate transport of goods); *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 126 (1978) (no facial discrimination when statute did not distinguish between in-state and out-of-state companies in the retail market); *Brown & Williamson*

---

[6] https://congestionreliefzone.mta.info/tolling.

*Tobacco Corp. v. Pataki*, 320 F.3d 200, 210 (2d Cir. 2003) (no facial discrimination when in-state and out-of-state companies faced the same restrictions on shipping and transporting).

The *Chan* and *Mulgrew* plaintiffs also allege that the burdens of congestion pricing on interstate commerce are incommensurate with the local benefits of the Act. *Chan* Complaint ¶ 235; *Mulgrew* Complaint ¶ 218. However, "[f]or a state statute to run afoul of the *Pike* standard, the statute, at a minimum, must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce." *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 109 (2d Cir. 2001). "[I]f no such unequal burden be shown, a reviewing court need not proceed further." *Id.*; *see also Nat'l Pork Producers*, 598 U.S. at 377. As noted above, there is no differential burden on interstate commerce in the Act, and even if there were, any burden is minimal in comparison to the substantial local benefits of reducing congestion and pollution and funding local transit systems. *See, e.g., United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 346-47 (2007) (under *Pike*, revenue generation was a cognizable benefit of a local solid waste flow control regulation, and any arguable burdens of the regulation on interstate commerce did not exceed the health and environmental benefits of the regulation); *VIZIO*, 886 F.3d at 258-260 (under *Pike*, a recycling program's burdens applied equally to in-state and out-of-state companies and did not exceed its benefits, which were "legion").

**B.    The Act Does Not Impose User Fees and Even If It Did, It Would Satisfy the *Evansville* Test.**

The *Chan* and *Mulgrew* plaintiffs also allege congestion pricing violates the dormant Commerce Clause because the pricing "(i) is not based on a fair approximation of the use of the facilities; (ii) is excessive in relation to the local benefits conferred; and (iii) discriminates against interstate commerce in violation of the United States Constitution." *Chan* Complaint ¶ 238; *Mulgrew* Complaint ¶ 221. *See also Evansville-Vanderburgh Airport Authority v. Delta Airlines, Inc.,* 405 U.S. 707, 714, 716-17 (1972).

The *Evansville* test does not apply to congestion pricing because congestion tolls are not fees to defray the costs of using the roads in the Central Business District but are instead designed to reduce congestion and air pollution in that district and to raise funds for public transit in New York City.  Even if congestion tolls were considered user fees, the Act would survive constitutional scrutiny.

**1.    The Act does not impose a user fee.**

As the Second Circuit has explained, the *Evansville* test does not apply to a state fee that funded private recycling of electronic waste because the fee was not "imposed . . . for the use of *state-owned or state-provided* transportation or other facilities."  *VIZIO,* 886 F.3d at 258 (emphasis in original); *see also Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 621-622 (1981) (*Evansville* test did not apply to severance tax because it was not "a specific charge . . . for the use of state-owned or state-provided transportation or other facilities").  Here too, the *Evansville* test does not apply because congestion tolls are not akin to such user fees.

9

Unlike a bridge or tunnel, the Central Business District is not a facility built or maintained by New York, MTA/Triborough, or New York City.  Instead, it is a "geographic area" in Manhattan "south of and inclusive of sixtieth street" excluding perimeter roads and other specified roads.  N.Y. Vehicle & Traffic L. § 1704(2).  And to the extent that State or local funds may be used to maintain or repair roads in the district, congestion tolls will not defray those costs.  Instead, congestion tolls will reduce congestion and air pollution in the district and raise funds for capital improvements to New York City's public transit.  *See* pp. 2, 9 above.  Indeed, congestion tolls will be paid to MTA, which is primarily responsible for public transit, not maintaining and repairing roads.  *See* N.Y. Vehicle & Traffic L. § 1704-a(1); N.Y. Pub. Auth. L. § 1264 ("The purposes of the [MTA] shall be the continuance, further development and improvement of commuter transportation" including "such transportation by railroad, omnibus, marine and air.")

## 2. Even if congestion tolls were construed as user fees, the Act satisfies the *Evansville* test.

However, this Court need not reach the question of whether the tolls are a user fee, because even if the three-prong *Evansville* test applies to congestion pricing, the Act meets that test.  In *Evansville,* the Supreme Court held that "a charge designed only to make the user of state-provided facilities pay a reasonable fee to help defray the costs of their construction and maintenance" is constitutional if "the toll is based on some fair approximation of use or privilege for use" and  "is neither discriminatory against interstate commerce nor excessive in comparison with the governmental benefit conferred."  405 U.S. at 714, 716-17.  *See also*

10

*Northwest Airlines, Inc. v. County of Kent, Mich.*, 510 U.S. 355, 369 (1994);

*Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, 567 F.3d 79, 83

(2d Cir. 2009) (applying the *Evansville* test to a user fee for a ferry).

In *Selevan v. New York Thruway Authority*, 584 F.3d 82 (2d Cir. 2009), the

Second Circuit held that the *Evansville* test should be applied to a user toll for a

bridge because the toll "closely resemble[d] the challenge to the airport user fee at

issue in *Evansville*," *id.* at 98. The court also explained that the "threshold" inquiry

under the test is whether a user toll discriminates against interstate commerce and

that, if a user toll does not, "it will have a comparatively easier time passing

constitutional muster." *Id.* at 94.

The *Chan* and *Mulgrew* plaintiffs invoke the *Evansville* test, claiming that

the Act would violate the Commerce Clause because the tolling "(i) is not based on a

fair approximation of the use of the facilities; (ii) is excessive in relation to the local

benefits conferred; and (iii) discriminates against interstate commerce in violation

of the United States Constitution." *Chan* Complaint ¶ 238; *Mulgrew* Complaint

¶ 221. First, congestion pricing easily survives the threshold prong—whether a

user fee discriminates against interstate commerce—because it does not

differentiate between interstate and intrastate trucks. Indeed, the congestion tolls

for vehicles that enter the Central Business District are the same whether the

vehicle came from other states or from other parts of New York State—and both the

out-of-state and in-state *Chan* and *Mulgrew* plaintiffs complain that they will have

to pay the toll, *Chan* Complaint ¶¶ 36-44; *Mulgrew* Complaint ¶¶ 41-71. Because

the Act does not discriminate between interstate and intrastate pricing, congestion

pricing has "a comparatively easier time passing constitutional muster." *See*

*Selevan*, 584 F.3d at 94.

Second, congestion pricing represents a fair approximation of use. Where a

user fee supports state-provided facilities other than the state-provided facility,

such as a bridge or tunnel, for which, the fee is charged, the user fee meets the fair

approximation of use prong if it "reasonably support[s] the budget of a

governmental unit that operates facilities that bear at least a 'functional

relationship' to facilities used by the fee payers. *Bridgeport*, 567 F.3d at 87 (citation

omitted); *see also Angus Partners LLC v. Walder*, 52 F. Supp. 3d 546, 567 (S.D.N.Y.

2014) ("all that is required is a 'functional relationship' between the toll and the

facilities used by the toll's payers" (quoting *Bridgeport*)).

There is a functional relationship between congestion tolls and the "facility"

for which drivers pay the toll—the Central Business District—with respect to the

first two goals of the Act, which are to reduce congestion and air pollution in that

district. The legislature found that congestion in the Central Business District is

the third worst among cities in the world; harms the metropolitan area's economy;

has reduced average traffic speeds to 6.8 miles per hour in the district and 4.7 miles

per hour in Midtown Manhattan; and significantly contributes to reduced air

quality. N.Y. Vehicle & Traffic L. § 1701. Based on those findings, the legislature

found that "a program to establish tolls for vehicles entering or remaining in the

most congested area of the state" is "necessary" and "a matter of substantial state

concern." *Id.* Because the legislature has found that congestion pricing will result in a less congested and polluted Central Business District, there is a functional relationship between congestion pricing and that district. *Cf. Bridgeport*, 567 F.3d at 87 (reducing air pollution on I-95 "cannot be said to confer an actual or potential benefit to the ferry passengers as users of the ferries and thus exceed the bounds of what may reasonably serve as the basis for the [Bridgeport Port Authority's] fee").

There is also a functional relationship between congestion tolls and the Central Business District with respect to the Act's third goal—raising funds for public transit—because public transportation benefits drivers in the district. In *Angus Partners*, the plaintiffs challenged toll discounts for Triborough's bridges and tunnels for drivers who used "E-ZPass" transponders issued by New York but not transponders issued by other states. 52 F. Supp. 3d at 561. Plaintiffs argued that the tolls were not based on a fair approximation of use because they were "being used to subsidize MTA facilities and programs unrelated to the operation or maintenance of the [Triborough] bridges and tunnels." *Id.* at 564. The court found that the bridge and tunnel tolls "fairly approximate[d] the costs of use" because the MTA and Triborough operate a "functionally integrated system" and public transportation provided by MTA "functionally support[ed] the [Triborough] bridges and tunnels by encouraging greater use of public transportation and thereby reducing traffic." *Id.* at 567, 568, 569. *See also Janes v. Triborough Bridge and Tunnel Auth.*, 774 F.3d 1052, 1055 n.6 (2d Cir. 2014) (applying *Evansville/Northwest Airlines* test and noting that bridge users receive "direct

benefits" from mass transit system that the tolls support); *cf. Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 887 F.2d 417, 422 (2d Cir. 1989) (affirming that there was a functional relationship between river-crossing PATH trains, and the bridges and tunnels used by motor vehicles to cross the same river); *Molinari v. N.Y. Triborough Bridge & Tunnel Auth.*, 838 F. Supp. 718, 729 (E.D.N.Y. 1993) (finding a "clear functional relationship between the Verrazano-Narrows Bridge and the subsidized mass transit facilities operated by the MTA in Staten Island and in the rest of the City of New York" for purposes of federal laws setting standards for tolls).

Nothing in the *Chan* or *Mulgrew* plaintiffs' allegations suggests that New York City's transportation system is not integrated or that upgrades to mass transit will not benefit drivers in the Central Business District by reducing congestion. Moreover, the legislature found that deficiencies in New York City's mass transit have other adverse impacts on those who use the Central Business District, including impacts on "health, safety, and livelihood" and "business and commerce." N.Y. Vehicle & Traffic L. § 1701. Thus, because congestion pricing will provide funds to upgrade mass transit and upgrading mass transit will benefit vehicles that enter the Central Business District, there is a functional relationship between congestion tolls and the district.

Finally, congestion tolls are not excessive in relation to the benefits conferred. The excessiveness standard, like the fair approximation standard, "simply requires reasonableness." *Angus Partners*, 52 F. Supp. 3d at 569. *Angus Partners* held that

14

Triborough's tolls did not breach the excessiveness standard for much the same reasons that the tolls met the fair approximation standard: providing revenue for mass transit operations "confer[red] vast benefits enjoyed by all users of New York City's integrated transportation system," including "attracting industry; attracting and retaining a talented workforce [and] attaining economic productivity" and "[a]ll commuters benefitted from the existence of a smoothly functioning mass transit system" and in particular "motorists using the bridges benefited from the availability of other commuting options through a corresponding reduction in traffic." *Id.* (citations and internal quotation marks omitted). Nothing in the *Chan* or *Mulgrew* complaints suggests that upgrades to New York City's mass transit funded by congestion tolls will not benefit its drivers in the same ways.

In addition, the Act requires tolls to be set at levels sufficient to raise $15 billion for mass transit upgrades. N.Y. Vehicle & Traffic L. § 1704-a(1). The Court should defer to the legislature's judgment that $15 billion is needed to improve mass transit, and in any event, the *Chan* and *Mulgrew* plaintiffs' allegations do not refute that judgment. *See Angus Partners*, 52 F. Supp. 3d at 568.

## II.    THE ACT DOES NOT VIOLATE THE RIGHT TO TRAVEL.

The *Chan* and *Mulgrew* plaintiffs claim that congestion pricing violates their right to travel. *Chan* Complaint ¶¶ 241-247; *Mulgrew* Complaint ¶¶ 223-228. However, they do not sufficiently allege that the Act violates their own right to travel and where there is no such allegation, a condition imposed on travel by a state is subject to the same analysis as a dormant Commerce Clause claim. As a

result, their right to travel claim fails for the same reason that their dormant Commerce Clause claim fails.

A state law "implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 53 (2d Cir. 2007) (quoting *Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986)). Where a state law does not, the right to travel and dormant Commerce Clause "inquiries collapse." *Janes v. Triborough Bridge & Tunnel Auth.*, 977 F. Supp. 2d 320, 336 (S.D.N.Y. 2013), *aff'd*, 774 F.3d 1052 (2d Cir. 2014); *see also Janes,* 774 F.3d at 1054-55 (same test); *Selevan*, 584 F.3d at 96 (same test); *Angus Partners*, 52 F. Supp. 3d at 560 n.5 ("inquiries collapse"). Because tolls have been found to be a "minor restriction" on travel, they have been analyzed under the dormant Commerce Clause. *Janes,* 774 F.3d at 1054-55; *see also Selevan*, 584 F.3d at 96; *Angus Partners*, 52 F. Supp. 3d at 560 n.5.

The *Chan* and *Mulgrew* plaintiffs claim that congestion pricing violates their right to travel because congestion tolls "were designed to, and will, deter the interstate and intrastate travel of Plaintiffs." *Chan* Complaint ¶ 244; *Mulgrew* Complaint ¶ 226. But "[a] law does not 'actually deter' travel merely because it makes it somewhat less attractive for a person to travel interstate." *Pollack v. Duff*, 793 F.3d 34, 46 (D.C. Cir. 2015). "[M]inor restrictions on travel, including delays and costs, simply do not amount to the denial of a fundamental right." *Owner Operator Independent Drivers Ass'n v. Pennsylvania Turnpike Comm'n*, 934 F.3d

16

283, 295 (3d Cir. 2019) (internal quotation marks and citation omitted).  Burdens on a single mode of transportation "do not implicate the right to interstate travel."  *Id.* (citation omitted).

In *Town of Southold*, the Second Circuit ruled that a local law that barred ferries carrying vehicles and certain faster or more powerful ferries from using ferry terminals in East Hampton did not violate the right to travel because "the purpose [of the law] was not to impede travel but to protect the welfare of Town residents and the integrity of the local environment, and nothing in the record evinces a clear purpose to impede travel from out of state."  477 F.3d at 54; *see also Abadi v. American Airlines, Inc.*, No. 23-cv-4033 (LJL), 2024 WL 1346437, at *55 (S.D.N.Y. Mar. 29, 2024) (Liman, J.) (purpose of airline mask policy was not to impede travel but to protect welfare of passengers).  The *Town of Southold* court also ruled that "travelers do not have a constitutional right to the most convenient form of travel[, and] minor restrictions on travel simply do not amount to the denial of a fundamental right."  477 F.3d at 54 (quoting *Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir. 1991)); *see also Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 141 (2d Cir. 2010) (travel delay of one day was "a minor restriction that did not result in a denial of the right to travel"); *Gilmore v. Gonzales*, 435 F.3d 1125, 1136 (9th Cir. 2006) ("the Constitution does not guarantee the right to travel by any particular form of transportation")

Congestion pricing under the Act is also a minor restriction whose statutory purpose is to protect the health of residents of the Central Business District and

17

facilitate traffic movement in that area, not impede travel.  As a result, the *Chan* and *Mulgrew* plaintiffs' right-to-travel claims are not subject to strict scrutiny and fails for the same reason that their dormant Commerce Clause claims fail.

## **CONCLUSION**

The Court should dismiss plaintiffs' dormant Commerce Clause and right to travel challenges to New York's Traffic Mobility Act.

Dated:  New York, New York
        September 30, 2024

Respectfully submitted,

LETITIA JAMES,
ATTORNEY GENERAL OF THE STATE
OF NEW YORK

By:   /s/ Andrew G. Frank
        Andrew G. Frank
        Assistant Attorney General
        N.Y.S Attorney General's Office
        28 Liberty Street
        New York, NY 10005
        (212) 416-8271
        andrew.frank@ag.ny.gov

*Attorneys for Stephanie Winkelhake, P.E., in her official capacity as Chief Engineer of the New York State Department of Transportation*

18