UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x
ELIZABETH CHAN, *et al.*,                    :
                                             :
                            Plaintiffs,    :
                                             :
                v.                      :  No. 1:23-cv-10365-LJL
                                             :
UNITED STATES DEPARTMENT OF                  :
TRANSPORTATION, *et al.*,                    :
                                             :
                            Defendants.    :
------------------------------------------------------------------------ x
MICHAEL MULGREW, *et al.*,                   :
                                             :
                            Plaintiffs,    :
                                             :
                v.                      :  No. 1:24-cv-01644-LJL
                                             :
UNITED STATES DEPARTMENT OF                  :
TRANSPORTATION, *et al.*,                    :
                                             :
                            Defendants.    ;
------------------------------------------------------------------------ x

**DEFENDANT STEPHANIE WINKELHAKE'S (1) REPLY
MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER
MOTION TO DISMISS AND (2) MEMORANDUM OF LAW IN
<u>OPPOSITION TO A PRELIMINARY INJUNCTION</u>**

                                              LETITIA JAMES
                                              Attorney General of the State of New York
                                              New York State Attorney General's Office
                                              28 Liberty Street
                                              New York, New York 10005
                                              Telephone:  (212) 416-8271

ANDREW G. FRANK
Assistant Attorney General
        *Of Counsel*

December 2, 2024

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

ADDITIONAL FACTUAL BACKGROUND ........................................................................... 2

STANDARD OF REVIEW FOR PRELIMINARY INJUNCTION ........................................... 3

ARGUMENT ............................................................................................................................... 4

I.    THE ACT DOES NOT VIOLATE THE DORMANT
      COMMERCE CLAUSE ................................................................................................... 5

II.   THE ACT DOES NOT VIOLATE THE RIGHT TO TRAVEL ..................................... 13

CONCLUSION .......................................................................................................................... 13

# **TABLE OF AUTHORITIES**

Page(s)

## **FEDERAL DECISIONS**

*American Trucking Ass'ns, Inc. v. Alviti,*
    630 F. Supp. 3d 357 (D.R.I. 2022),
    *appeal filed*, No. 22-1796 (1st Cir. Oct. 20, 2022) ........................................... 11

*American Trucking Ass'ns, Inc. v. New York State Thruway Authority,*
    199 F. Supp. 3d 855 (S.D.N.Y. 2016),
    *Vacated on other grounds,* 795 F.3d 351 (2d Cir. 2015) ................................ 11

*American Trucking Ass'n v. New York State Thruway Authority,*
    238 F. Supp. 3d 527 (S.D.N.Y. 2017),
    *aff'd*, 886 F.3d 238 (2d Cir. 2018) ............................................................... 5, 11

*American Trucking Ass'ns. Inc. v. Scheiner,*
    483 U.S. 266 (1987) ..................................................................................... 7, 8, 9

*Angus Partners LLC v. Walder,*
    52 F. Supp. 3d 546 (S.D.N.Y. 2014) ................................................................. 10

*Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*,
    887 F.2d 417 (2d Cir. 1989) .............................................................................. 10

*Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*,
    567 F.3d 79 (2d Cir. 2009) ........................................................................ 11, 12

*Evansville-Vanderburgh Airport Authority v. Delta Airlines, Inc.,*
    405 U.S. 707 (1972) ................................................................................... 1, 6, 7

*Goldberg v. Sweet,*
    488 U.S. 252 (1989) ............................................................................................ 8

*New York Progress & Prot. PAC v. Walsh,*
    733 F.3d 483 (2d Cir. 2013) ................................................................................ 3

*Sussman v. Crawford,*
    488 F.3d 136 (2d Cir. 2007) ............................................................................ 3, 4

*Town of Southold v. Town of E. Hampton,*
    477 F.3d 38 (2d Cir. 2007) .................................................................................. 9

 Page(s)

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008) .................................................................................................. 7

**FEDERAL STATUTES**

Value Pricing Pilot Program
    23 U.S.C. § 149 note ................................................................................................. 5

Pub. L. 102-240, Title I, § 1012(b) ............................................................................................. 5

**STATE STATUTES**

N.Y. Vehicle & Traffic Law
    § 1704-a(1) ............................................................................................................. 12

## PRELIMINARY STATEMENT

The Court should grant Stephanie Winkelhake's motion to dismiss the *Chan* and *Mulgrew* plaintiffs' federal constitutional challenges to New York's Traffic Mobility Act ("Act") and deny plaintiffs' motion for a preliminary injunction to the extent that it is based on those challenges.[1]

The dormant Commerce Clause does not apply to congestion pricing because Congress expressly authorized States to adopt congestion pricing. In any event, the Act does not violate the dormant Commerce Clause because the Act does not discriminate against interstate commerce, impose a different burden on interstate commerce than the burden imposed on intrastate commerce, or have an impermissible extraterritorial effect. The test for user fees in *Evansville-Vanderburgh Airport Authority v. Delta Airlines, Inc.*, 405 U.S. 707, 714, 716-17 (1972), does not apply to congestion tolls because they are not a fee to help defray the costs of construction and maintenance of a state-owned facility, but if applied, the Act meets that test.

---

[1] As Ms. Winkelhake did in the opening brief on her motion to dismiss the federal constitutional claims, Memorandum of Law of Defendant Stephanie Winkelhake, P.E., in Support of Her Motion to Dismiss the Federal Constitutional Claims ("Winkelhake Br.") at 1 n.1 (Sept. 30, 2024) [*Chan* ECF No. 116; *Mulgrew* ECF No. 103], she here addresses only the constitutionality of the Act under the U.S. Constitution and supports dismissal of the as-applied federal constitutional claims regarding implementation of the Act for the reasons stated in the papers filed by the Metropolitan Transportation Authority and Triborough Bridge and Tunnel Authority in support of their motion to dismiss those claims. She also supports denial of the preliminary injunction motion, to the extent based on those as-applied federal constitutional claims, for the reasons stated in those papers, and does not separately argue irreparable harm, the balance of the equities, or the public interest.

The *Chan* and *Mulgrew* plaintiffs' right-to-travel claims should be dismissed and do not warrant a preliminary injunction because the basis for those claims is the same as the basis for the dormant Commerce Clause claims, and thus they fail for the same reasons.

## ADDITIONAL FACTUAL BACKGROUND

On November 14, 2024, Governor Kathy Hochul announced a proposal to proceed with congestion pricing under the Act, but with the toll structure and rates that had been adopted by the Triborough Bridge and Tunnel Authority ("Triborough") in March 2024 phased in gradually over several years. *See, e.g.*, Letter from Roberta A, Kaplan to Hon. Lewis J. Liman at 1 (Nov. 14, 2024) [*Chan* ECF No. 125; *Mulgrew* ECF No. 113]. On November 18, 2024, Triborough adopted the phase-in feature of the toll rate structure it had approved in March and set January 5, 2025 as the new implementation date. *See, e.g.*, Letter in *Trucking Ass'n of N.Y., Inc. v. Metropolitan Transp. Auth.* No. 1:24-cv-4111, from Brian D. Carr to Hon. Lewis J. Liman at 1 (Nov. 19, 2024) [*Trucking Association* ECF No. 73]. On November 21, 2024, the Federal Highway Administration and the three project sponsors, Triborough, the New York State Department of Transportation, and the New York City Department of Transportation, signed the Value Pricing Pilot Program agreement that authorizes Triborough to begin congestion pricing. Agreement (Nov. 21, 2024).[2]

---

[2] https://new.mta.info/document/158201.

At the November 21, 2024 conference before the Court, the *Chan* and *Mulgrew* plaintiffs informed this Court that they would join the motion for a preliminary injunction previously filed by the Trucking Association of New York in its challenge to congestion pricing.  *See* Memorandum of Law in Support of Plaintiffs' Motions for Preliminary Injunction on Their Constitutional Claims (*Chan/Mulgrew* PI Br.") at 2-3 (Nov. 29, 2024) [*Chan* ECF No. 134]; *Mulgrew* ECF No. 122].  On November 27, 2024, the Court set an amended briefing schedule that would permit the preliminary injunction motion to be decided together with defendants' pending motions to dismiss.  So-Ordered Letter (Nov. 27, 2024) [*Chan* ECF No. 132; *Mulgrew* ECF No. 120].

## STANDARD OF REVIEW FOR PRELIMINARY INJUNCTION

When determining a movant's entitlement to a preliminary injunction, courts consider whether (1) the movant is likely to succeed on the merits, (2) the movant is likely to suffer irreparable harm absent an injunction (3) the balance of equities tips in the movant's favor, and (4) an injunction is in the public interest.  *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013).  Where, as here, a preliminary injunction "will affect government action taken in the public interest pursuant to a statutory or regulatory scheme," the moving party must satisfy a heightened standard, which requires a "clear" or "substantial" likelihood of success.  *Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007) (quotation marks omitted).  In all events, a "'preliminary injunction is an extraordinary and drastic remedy, one

that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Id*. at 139 (emphasis in original).

## ARGUMENT

The Court should dismiss the *Chan* and *Mulgrew* plaintiffs' challenges to the constitutionality of the Act under the U.S. Constitution and deny their request for a preliminary injunction to the extent that it is based on those challenges. The dormant Commerce Clause does not apply to congestion pricing because congestion pricing was authorized by Congress, and in any event, the Act does not discriminate against interstate commerce, impose an unequal burden on interstate commerce, or have an impermissible extraterritorial effect. There is no violation of the constitutional right to travel because the Act's minor restrictions on travel for the purpose of reducing congestion and air pollution and collecting funds for public transit do not deter travel, do not have impeding travel as their primary objective, and do not establish any classification that penalizes the right to travel. Moreover, to the extent the right-to-travel claim rests on the same basis as the dormant Commerce Clause claims, it fails for the same reasons.[3]

---

[3] The *Chan* and *Mulgrew* plaintiffs are moving for a preliminary injunction with regard to their federal constitutional claims based solely on the motion papers filed by the Trucking Association in its case, *see Chan/Mulgrew* PI Br. at 2-3, and those papers include arguments regarding preemption. But the *Chan* and *Mulgrew* plaintiffs' complaints contain no preemption claim, so those plaintiffs cannot obtain a preliminary injunction based on the Trucking Association's preemption claim. Accordingly, Ms. Winkelhake does not address preemption in this brief.

### I. THE ACT DOES NOT VIOLATE THE DORMANT COMMERCE CLAUSE.

As an initial matter and as shown in Ms. Winkelhake's opening brief on her motion to dismiss, the dormant Commerce Clause does not apply to the Act because Congress has authorized congestion pricing. Winkelhake Br. at 5. The *Chan* and *Mulgrew* plaintiffs argue that such an authorization must be "expressly stated." Memorandum of Law in Opposition to Defendants' Motions to Dismiss Plaintiffs' Constitutional Claims ("Opp. Br.") at 7 n.5 (Nov. 25, 2024) [*Chan* ECF No. 130; *Mulgrew* ECF No. 118]. But "value pricing pilot programs" are expressly authorized by Congress, 23 U.S.C. § 149 note[4], and plaintiffs do not contest that New York's congestion pricing program is a value pricing pilot program.[5] Thus, the Act is in "perfect accord with Congress' unmistakable intent." *American Trucking Ass'ns, Inc. v. New York State Thruway Auth.*, 238 F. Supp. 3d 527, 534 (S.D.N.Y. 2017), *aff'd*, 886 F.3d 238 (2d Cir. 2018).

In any event, as explained in Ms. Winkelhake's opening brief, the Act does not violate the dormant Commerce Clause because it does not facially discriminate against or unduly burden interstate commerce. Winkelhake Br. at 7-8. As further explained, the test for evaluating the constitutionality of user fees established in

---

[4] https://www.govregs.com/uscode/title23_chapter1_section149_notes.

[5] The original title of the federal statute authorizing congestion pricing was "Congestion Pricing Pilot Program," and the statute expressly authorized "congestion pricing pilot projects." Pub. L. 102-240, Title I, § 1012(b). While those projects are now called value pricing pilot programs, they clearly include congestion pricing. *See, e.g.*, Federal Highway Administration, Value Pricing Pilot Program, https://ops.fhwa.dot.gov/congestionpricing/value_pricing/. Plaintiffs do not argue otherwise.

*Evansville-Vanderburgh Airport Authority v. Delta Airlines, Inc.*, 405 U.S. 707 (1972), does not apply here because the congestion tolls are not user fees, Winkelhake Br. at 9-10, and even if the *Evansville* test did apply, congestion pricing would pass it, *id.* at 10-15.

The *Chan* and *Mulgrew* plaintiffs argue that, even if the *Evansville* test does not apply, the Act "facially discriminates," Opp. Br. at 6, n.4, but they identify no provision of the Act that does so. Instead, they allege a number of facts relating to specific costs under the toll schedule and particular plaintiffs' circumstances, *id.*, which would at most be relevant to an as-applied challenge to congestion pricing implementation.

As Ms. Winkelhake has explained, the *Evansville* test does not apply to congestion tolls because they are not "a charge designed only to make the user of state-provided facilities pay a reasonable fee to help defray the costs of their construction and maintenance." Winkelhake Br.at 9-10 (quoting *Evansville*, 405 U.S. at 714). In response, the *Chan* and *Mulgrew* plaintiffs do not contend that congestion tolls *are* such a charge and thus have waived that argument. Instead, they argue only that Ms. Winkelhake's argument "flatly undercuts" the other defendants' argument that congestion pricing passes the *Evansville* test. Opp. Br. at 12, n.8. Ms. Winkelhake's argument does not do so because she argues in the alternative: the *Evansville* test does not apply, but if the Court determines that it does, the Act passes the test. Winkelhake Br. at 9-15.

6

The *Chan* and *Mulgrew* plaintiffs also argue that the Court cannot determine whether the tolls meet the *Evansville* test without discovery concerning "the actual impact of the toll and how the revenue will be spent." Opp. Br. at 9. However, a facial challenge to the Act requires plaintiffs to establish that "the law is unconstitutional in all of its applications," *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008), and no fact discovery would be necessary to make that showing. But even if discovery were necessary to address the motions to dismiss, the *Chan* and *Mulgrew* plaintiffs have not shown that they are likely to succeed on the merits, as necessary to obtain a preliminary injunction.

As Ms. Winkelhake has shown, congestion pricing meets all three requirements of the *Evansville* test, 405 U.S. at 716-17: the Act does not discriminate against interstate travel; congestion pricing as contemplated by the Act represents a fair approximation of use; and it does not impose costs that would be excessive in relation to the benefits conferred. Winkelhake Br. at 7-8, 10-15. The *Chan* and *Mulgrew* plaintiffs respond that congestion tolls do not meet any of those requirements, Opp. Br. at 9-20, but their arguments lack merit.

First, as discussed above (at 6), plaintiffs argue without basis that the Act discriminates on its face. They also argue that a tolling schedule, even if facially neutral, can still be discriminatory if it burdens out-of-state payers more than in-state payers, citing *American Trucking Association v. Scheiner*, 483 U.S. 266, 282-87 (1987). Opp. Br. at 19-20. But *Scheiner* ruled that a tax that "impose[d] a cost per mile on [out-of-state] trucks that is approximately five times as heavy as the

7

cost per mile borne by local trucks" was discriminatory. 483 U.S. at 286. Nothing in the Act requires higher congestion tolls based on state of residence. *Scheiner*, *id.*, also found that local trucks received a greater benefit than out-of-state trucks because they used the roads more often, *see* Opp. Br. at 20, but out-of-state and New York drivers, as well as everyone else using the Central Business District, get the same benefits from congestion tolls because they benefit from reduced congestion and air pollution in the District. As stated in *Scheiner*, "the Commerce Clause is not offended when state boundaries are economically irrelevant." *Id.* at 283.

      Plaintiffs also invoke the "internal consistency" test for actual discrimination in *Scheiner*, 483 U.S. at 284, but misunderstand it to prohibit similar taxes in multiple states. Opp. Br. at 19. Instead, the test allows such taxes so long as they "maintain state boundaries as a neutral factor in economic decisionmaking." 483 U.S. at 283. That is true with respect to congestion pricing under the Act: regardless of whether drivers entering the Central Business District started their drives in New York, New Jersey, or any other state, nothing in the Act requires that they pay different congestion tolls. In contrast, as discussed above, the tax at issue in *Scheiner* fell more heavily on out-of-state drivers. The internal consistency rule also allows each state to tax a transaction so long as no other state could tax that transaction. *Id.* at 282-83 (acknowledging constitutionality of state vehicle registration fees). *See also Goldberg v. Sweet*, 488 U.S. 252, 261 (1989) (upholding tax on interstate telephone calls charged to a service address in the taxing state). Because no other state will, or could, impose a congestion toll on entry to the

8

Central Business District, there is no issue of internal consistency here. And by the same token, New Jersey could impose a congestion toll to enter a congested area of Newark, and Pennsylvania could do the same with respect to Philadelphia, so long as those tolls did not distinguish between in-state and out-of-state drivers.

On this point, plaintiffs quote the phrase "inexorable hydraulic pressure" in *Scheiner*, Opp. Br. at 19, but that partial quotation is misleading. What the decision actually says is that a tax has a discriminatory effect if it "exerts an inexorable hydraulic pressure on interstate businesses to ply their trade *within the State that enacted the measure*." 483 U.S. at 286 (emphasis added). Plaintiffs have provided no basis to conclude that this new congestion pricing toll in New York will create "inexorable hydraulic pressure" for out-of-state companies to move business to New York.[6]

Second, the *Chan* and *Mulgrew* plaintiffs argue that congestion pricing does not meet the fair-approximation requirement because, as drivers in the Central Business District, they "will not benefit from the toll revenue" raised to support public transit. Opp. Br. at 10. They argue similarly that many of them, including those who live in New Jersey and Pennsylvania, cannot use the MTA system, *id.* at 11. In the preliminary injunction motion, they similarly argue that "delivery

---

[6] The *Chan* and *Mulgrew* plaintiffs also assert that Ms. Winkelhake has asked the Court to review the dormant Commerce Clause claim under *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 53 (2d Cir. 2007), rather than *Evansville*. Opp. Br. at 18. But Ms. Winkelhake did not raise *Town of Southold* in connection with the dormant Commerce Clause. Instead she relied on it only to argue that plaintiffs do not have a right to travel claim separate from their dormant Commerce Clause claim. Winkelhake Br. at 16-17. Plaintiffs do not disagree.

trucks have no way to benefit from improvements to subways, buses, and railroads." Memorandum of Law in Support of Trucking Ass'n of N.Y.'s Motion for Preliminary Injunction ("PI Br.") at 19 (May 30, 2024) [*Trucking Association* ECF No. 4].[7] But, as discussed above (at 8), all of the benefits of congestion pricing support everyone in the Central Business District, including drivers.  Indeed, two of those benefits—reducing congestion and air pollution in the Central Business District—benefit only people who use the District.  Winklehake Br. at 10, 12-13.  The third benefit, raising revenue for capital projects for public transit, also benefits everyone in the District because upgrades to public transit that will be supported by the new revenue from these tolls will encourage use of public transit and reduce congestion even for those who continue to drive.  *Id.* at 13-14.  Indeed, *Angus Partners LLC v. Walder*, 52 F. Supp. 3d 546, 567 (S.D.N.Y. 2014), which plaintiffs cite, recognizes that "[t]raffic spillover" is "an appropriate consideration[ ] in determining whether a functional relationship exists" for purposes of the first requirement.  *See also Auto. Club of New York, Inc. v. Port Auth. of N.Y. & N.J.*, 887 F.2d 417, 421-23 (2d Cir. 1989) (upholding use of Port Authority bridge and tunnel toll revenues for PATH trains based on congestion "spillover" effects).

The decisions on which the *Chan* and *Mulgrew* plaintiffs rely, Opp. Br. at 12-13, hold only that the fair-approximation requirement must focus on the benefits provided by the transportation system for which the toll is charged, and not on

---

[7] Because the *Chan* and *Mulgrew* plaintiffs are relying on the Trucking Association's preliminary injunction motion papers rather than preparing their own, there is a misalignment between the focus on the interests of truck operators in the motion papers and the interests of the *Chan* and *Mulgrew* plaintiffs.

10

other unrelated benefits. *Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, 567 F.3d 79, 87 (2d Cir. 2009), held that the reduction of air pollution on an interstate highway could not justify a fee for riding a ferry. *American Trucking Ass'ns, Inc. v. New York State Thruway Authority*, 199 F. Supp. 3d 855, 879 (S.D.N.Y. 2016), *vacated on other grounds,* 795 F.3d 351 (2d Cir. 2015), ruled that Thruway tolls could not be charged to fund the operation of canals because drivers "derive[d] no benefit" from the canals.[8] And *American Trucking Associations, Inc. v. Alviti*, 630 F. Supp. 3d 357, 382 (D.R.I. 2022)), *appeal filed*, No. 22-1796 (1st Cir. Oct. 20, 2022), ruled that only the costs of maintaining the bridges for which tolls are charged, and not of Rhode Island's bridges generally or its transportation system, could be considered. Here, in contrast, drivers in the Central Business District will receive the benefits of the congestion tolls that they are required to pay in the form of reduced congestion and cleaner air.

The *Chan* and *Mulgrew* plaintiffs also argue that the $15 billion in revenue to be raised by congestion tolls is "is not based on an approximation of the public's use of the facilities to support the facilities." Opp. Br. at 10. But, unlike the user fees at issue in *Evansville, see* p. 6 above, the purpose of congestion tolls is not to raise revenue to support the roads in the Central Business District. The fair-approximation requirement must be measured against the purposes of the toll, including supporting upgrades to public transit. The New York Legislature

---

[8] On remand after vacatur, the district court ruled that the toll was constitutional because Congress had authorized it, and the Second Circuit upheld that decision. *American Trucking Ass'ns, Inc. v. New York State Thruway Auth.*, 238 F. Supp. 3d 527, 533-34, 541 (S.D.N.Y. 2017), *aff'd*, 886 F.3d 238 (2d Cir. 2018).

determined that congestion pricing should raise $15 billion for MTA capital projects, N.Y. Vehicle & Traffic L. § 1704-a(1), and plaintiffs do not allege that that goal was unfounded.

Third, the *Chan* and *Mulgrew* plaintiffs argue that congestion pricing is excessive because some drivers would get no benefit from mass transit improvements, again citing *Bridgeport*, *New York State Thruway Authority*, and *Alviti*, Opp. Br. at 14-16. But unlike those cases and as discussed above (at 8) and in Ms. Winkelhake's opening brief (at 10, 12-13), congestion pricing benefits all drivers entering the Central Business District by reducing congestion and air pollution. Plaintiffs also contend in their preliminary injunction brief (at 20-21) that reductions in traffic congestion or air pollution constitute "quality of life" improvements that cannot constitute a benefit to toll payers, citing *Bridgeport*, 567 F.3d at 87. That contention fails for the same reason: the congestion and air pollution benefits here are not collateral benefits accruing to use of unrelated facilities, as in *Bridgeport*, but are instead one of the main public policy purposes of the Act and directly related to the actions that are subject to tolling.

Plaintiffs also argue that the decisions Ms. Winkelhake cites do not hold that reduction of congestion is by itself a sufficient benefit to "render tolls non-excessive," Opp. Br. at 17, but identify nothing in those cases suggesting that it cannot be sufficient, as would be necessary to support a ruling that the Act is facially unconstitutional. Finally, the preliminary injunction brief also claims that congestion pricing will not reduce congestion in the District because half of the

vehicles that enter the District are exempt from the tolls, PI Br. at 9. That claim is based on the details of the program adopted by Triborough rather than the Act.

## II.     THE ACT DOES NOT VIOLATE THE RIGHT TO TRAVEL.

The *Chan* and *Mulgrew* plaintiffs argue that their right-to-travel claim is valid for the same reasons as their dormant Commerce Clause claim, *see*, *e.g.*, Opp. Br. at 1, 2, 6 n.4; PI Br. at 22. Accordingly, those arguments fail for the reasons set out above (at 9-13).

## CONCLUSION

The Court should dismiss plaintiffs' dormant Commerce Clause and right to travel challenges to New York's Traffic Mobility Act and deny the preliminary injunction.

Dated:  New York, New York
            December 2, 2024

Respectfully submitted,

LETITIA JAMES,
ATTORNEY GENERAL OF THE STATE
OF NEW YORK

By:  */s/ Andrew G. Frank*
       Andrew G. Frank
       Assistant Attorney General
       N.Y.S Attorney General's Office
       28 Liberty Street
       New York, NY 10005
       (212) 416-8271
       andrew.frank@ag.ny.gov

*Attorneys for Stephanie Winkelhake, P.E., in her official capacity as Chief Engineer of the New York State Department of Transportation*

13